240 So.2d 664

**ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY, a Corp.**

**v.**

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, a Corp., and Joseph S. Szczepanski, etc.**

**4 Div. 331.**

Supreme Court of Alabama.

Nov. 5, 1970.

Walker & Hill, Opelika, J. Pelham Ferrell, Phenix City, for appellant.

Smith & Miller, Phenix City, for appellees.

COLEMAN, Justice.

An insurer appeals from a decree in equity declaring that the insurer has the primary duty to defend Joseph S. Szczepanski (herein sometimes referred to as the

driver) in four actions at law brought against him. In two of the actions, one Debbie Newsome is also a defendant. The plaintiffs in the actions seek to recover for damages allegedly resulting from the collision of two automobiles. Szczepanski was driving one of the automobiles which was a Corvair.

We reverse and hold that the appellant insurer is not liable to defend the driver in said actions.

The driver commenced the instant suit by filing his bill of complaint against the appellant and four natural persons. Appellant is Alabama Farm Bureau Mutual Casualty Insurance Company, a corporation, herein referred to as Farm Bureau. The four natural persons are, to wit: Doris M. Best and her husband, John D. Best; Jack D. Wells; and Debbie Newsome. Debbie Newsome is the daughter of Jack D. Wells. Doris M. Best and John D. Best are the plaintiffs who brought the four actions against the driver and Debbie Newsome.

The driver alleges in his bill that Farm Bureau issued its policy to Jack D. Wells as the owner of the Corvair automobile; that the Corvair had been delivered to the driver by Debbie Newsome who authorized the driver to drive the Corvair; and that he was driving it with the permission of Debbie Newsome at the time of the collision. A copy of the policy is attached to and made a part of the bill of complaint.

The bill of sale for the Corvair and a draft issued by Farm Bureau in payment for damage to the Corvair are also made exhibits to the bill. The driver avers that Farm Bureau has refused to defend the four actions against the driver and that it is necessary that the court determine whether Farm Bureau is liable to defend said actions.

The driver alleges that after the collision, Farm Bureau paid off for the collision damage to the Corvair; and on informa-

tion and belief, the driver avers that, prior to the date of the collision, Farm Bureau acknowledged coverage of the car under its policy issued to Jack D. Wells and had in its possession the bill of sale for the Corvair showing the acquisition thereof by Debbie Newsome and acknowledging "its liability and responsibility therefor and is now defending" Debbie Newsome in said actions to which she is a party defendant. The driver avers that Farm Bureau had previously issued another policy to Jack D. Wells "identical to" the policy on the Corvair.

The driver alleges that Farm Bureau, under its policy, is liable to defend the driver of any automobile covered by its policy who may drive the insured car with the knowledge and consent of the owner, and that Debbie Newsome, being the owner, permitted and authorized the driver to drive the Corvair, and he is entitled to have Farm Bureau defend him in said actions.

Farm Bureau filed its answer and cross bill. Farm Bureau admits that it issued its policy to Jack D. Wells as owner of the Corvair and avers that Farm Bureau has at all times treated and recognized Jack D. Wells as owner of the Corvair; that until several days after the collision, Farm Bureau had no notice that any other person was the owner or reputed owner of the Corvair. Farm Bureau refuses to acknowledge liability to defend the driver in said actions at law; denies that its policy covers the driver or provides for his defense by Farm Bureau; admits that Farm Bureau paid for damage to the Corvair, but denies that at any time prior to the collision Farm Bureau had notice or knowledge that Debbie Newsome was owner of the Corvair and denies that Farm Bureau had knowledge or possession of the bill of sale to Debbie Newsome. Farm Bureau admits that it is defending Debbie Newsome in the actions against her.

Farm Bureau makes respondents to its cross bill the following, to wit: the driver, the driver's father, the plaintiffs in the

law actions against the driver, and also Government Employees Insurance Company, a corporation, herein referred to as Government. Farm Bureau avers that Government issued its policy to the driver's father and that under its policy, Government is obligated to defend the driver in the four actions pending against him.

After taking testimony ore tenus, the court rendered its decree which recites in part as follows:

"4. That the court finds that the said Joseph S. Szczepanski had the express consent of the said Debbie Newsome to operate and drive said automobile involved in said accident at the time of the collision between the car being driven by him and owned by the said Debbie Newsome and the car being driven by Mrs. Doris M. Best, and that he had the express or implied right to drive said car in so far as Jack D. Wells is concerned, and that it is the primary duty of Alabama Farm Bureau Mutual Casualty Insurance Company to defend said Joseph S. Szczepanski in each of the aforesaid suits."

The court further declared that Government is secondarily liable, within the limits of its policy, to pay the amount by which any judgment recovered against the driver in the four actions may exceed the limits of Farm Bureau's policy.

The evidence does not show that, prior to the collision, Farm Bureau had notice or knowledge that Debbie Newsome was the true owner of the Corvair or that Farm Bureau had possession or custody of the bill of sale for the Corvair.

The evidence shows that Debbie Newsome had been married and divorced and was nineteen years old on the date of the collision. She and her child were living in the home of her parents at the time of the collision and had been living there several months prior to the collision. She was working. The bill of sale shows that the Corvair was sold to "Debbie Wells Newsome." Her mother, Mrs. Wells, testified that she borrowed the money from the bank to buy the car. Debbie made the payments. Mrs. Wells testfied that she handles practically all the business "with her family."

Mrs. Wells called the local secretary of Farm Bureau, Mrs. Boss, on the telephone and gave the information for the insurance. Mrs. Wells told Mrs. Boss that Debbie and another daughter, Carol, were principal users of the Corvair, and that Mrs. Wells would be using it also. Mrs. Wells testified as follows:

"Q. Do you recall whether you were asked on the phone who the real owner of the automobile was?

"A. I don't recall being asked that.

"Q. In substance, isn't this what happened, Mrs. Wells: Didn't you call up Mrs. Wells (sic) and tell her, 'We have another automobile we want to get insurance on?'

"A. That's about what I said.

"Q. Isn't that exactly what happened?

"A. That's about it.

"CROSS-EXAMINATION

"Questions by Mr. Ferrell:

"Q. You said, 'We have another automobile?'

"A. 'We have bought another car and we want insurance on it.'

"Q. That's your best recollection of what you told Mrs. Boss?

"A. Yes, sir.

"Q. You don't recall telling her that Debbie had bought the car, do you?

"A. No, I sure don't.

"Q. Debbie Newsome. You didn't take a bill of sale down there, did you?

"A. No. I was at work and I asked her if I could give her the information over the phone and let my daughter take the check—

"Q. And your daughter Carol, to your knowledge did she take the bill of sale covering this car down there?

"A. No, not to my knowledge."

The application is headed with the name and address of "JACK D. WELLS." Debbie Newsome and Carol Wells are listed under "Full Name of ALL DRIVERS." The application is signed: "J. D. Wells by Carol Wells." It seems to be admitted that Carol took the check to pay for the policy and signed the application.

On the policy, the "Policy Holder" is listed as "Jack D. Wells," and the bank is shown as "Lien Holder." The policy recites:

### "DEFINITIONS—INSURING AGREEMENTS I AND II

*"Named Insured*—means the individual so designated in the declarations and also includes the spouse, if a resident of the same household.

*"Insured*—under coverages A, B, C, and C–1, the unqualified word 'insured' includes (1) the named insured, and also includes (2) his relatives, (3) any other person while using the automobile, provided the actual use of the automobile is with the express permission of the named insured, and (4) under coverages A and B any person or organization legally responsible for the use thereof by an insured as defined under the three subsections above."

It will be noted that in the "omnibus clause" quoted above, in provision (3), liability coverage is extended to any other person using the automobile ". . . . with the express permission of the named insured."

This provision is different from the omnibus clause in many policies which do not require the "express permission" of the named insured but require merely the "permission" of the named insured. The decision in the instant case turns on the construction and application of the words "express permission." Where only "permission" is required, the courts have held that the permission is sufficient to provide coverage if the facts justify a finding that either express or implied permission had been granted by the named insured or other person authorized to grant permission. See 5 A.L.R.2d 601. One court has said:

"Under the Virginia statute, the permission of an assured in a liability insurance policy, to bind the insurance company, may be either express or implied. To be express, it must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference. On the other hand, the correlative word, 'implied,' as defined in Webster's New International Dictionary (2d Ed.), means 'inferential or tacitly conceded.' It involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent. An implied permission is not, therefore, confined alone to affirmative action." Hinton v. Indemnity Ins. Co., 175 Va. 205, 213, 214, 8 S.E.2d 279, 283.

In Webster's Third New International Dictionary, Copyright 1961, page 803, the adjective, "express," is defined as follows:

"1 a: directly and distinctly stated or expressed rather than implied or left to inference: not dubious or ambiguous: DEFINITE, CLEAR, EXPLICIT, UNMISTAKABLE."

Another court has said:

"Express permission would necessarily include prior knowledge of the intended use and an affirmative and active consent to it. . . . ." Bradford v. Sargent, 135 Cal.App. 324, 27 P.2d 93, 96.

In the case at bar, there is no evidence that Jack D. Wells or his spouse affirmatively gave any direct or distinct permission for Joseph S. Szczepanski to drive the Corvair. Jack D. Wells testified:

"Q. Mrs. Debbie Newsome is your daughter?

"A. Yes, sir.

"Q. She is living in your household?

"A. Yes, sir.

"Q. How long has she been living with you, please, sir, if you recall, since she married?

"A. I don't remember the exact date.

"Q. Just your judgment, prior to this accident?

"A. Two or three years.

". . . . . . . . .

"Q. Was she living in your home at the time that a Corvair, a '61 model Corvair, was bought by she and her mother from Plaza Motors Company?

"A. Yes, sir.

"Q. How long had she had the car prior to this accident where the Szczepanski boy was driving, do you recall?

"A. I couldn't remember the exact date; it wasn't too long.

"Q. Did you have any other automobile at the home at the time—insured?

"A. Yes, sir, I had one.

"Q. What kind of car did you have?

"A. I believe I had a '59 Buick at the time.

"Q. A 1959 Buick?

"A. Yes, sir.

"Q. And how long had you had it?

"A. Maybe six months.

"Q. Six months?

"A. Maybe; that's not—

"Q. Did you have any accident insurance or any liability property damage insurance on that car, on the Buick?

"A. I couldn't tell you exactly what I have on it. My wife tends to all that business. I'm sure we have it, though, in some form or another.

"Q. Did you have any insurance on this car, this Corvair that your daughter had bought and your wife had bought together?

"A. If we did, they did it, I didn't. She takes care of all the business.

"Q. Did you know anything about the money that was borrowed at the Phenix-Girard Bank to pay for the Corvair?

"A. No, sir.

"Q. You had nothing to do with that?

"A. No, sir.

"Q. That was all handled by your wife and your daughter?

"A. Yes, sir.

". . . . . . . . .

"Q. Mr. Wells, do you know Joe Szczepanski?

"A. No, sir. I knew him that night after the car was wrecked. He was in jail when I came in and the police told me about it. That's the first time I had ever seen the boy.

"Q. And had you ever talked with him over the telephone?

"A. No, sir.

". . . . . . . . .

"Q. Do you know why Mr. Szczepanski was in jail that night, Mr. Wells?

"A. On my book it says 'reckless driving.'

"Q. On your book?

"A. Yes, sir. I was the jailer. See, I'm the jailer down there."

This court has said:

"No one doubts, we take it, that in the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts are without right to add anything to their contracts, or to take anything from them. 14 R.C.L. pp. 928, 929. Thus they have the right, in the absence of statutory provisions to the contrary, to write their contracts with narrow coverage, if they see proper to do so. There is no compulsion against either the assured or insurer. The assured may, or may not, as he sees proper, take the policy.

"In the case of Life & Casualty Insurance Co. v. Whitehurst, 226 Ala. 687, 148 So. 164, 165, we reaffirmed the rule declared in Life & Casualty Ins. Co. of Tennessee v. Tollison, 223 Ala. 78, 134 So. 805, viz: 'We approve, as of course, the rule that insurance contracts may be and often are made with very limited coverage, the small premium fixed on careful calculation of the hazard assumed; and they should be enforced, not a new or enlarged contract made for the parties.'" Loveman, Joseph & Loeb v. New Amsterdam Casualty Co., 233 Ala. 518, 521, 173 So. 7, 9.

". . . . Provisions in policies of insurance which clearly disclose the parties' real intent are not to be given a strained construction to raise doubts where none reasonably exist. . . . ." Chemstrand Corp. v. Maryland Casualty Co., 266 Ala. 626, 632, 98 So.2d 1, 6.

"When the language of an insurance policy is clear and unambiguous it must be construed as it reads. The courts are not at liberty to raise doubts where none exist or to make a new contract for the parties. (Citations Omitted)" Central Mutual Ins. Co. v. Royal, 269 Ala. 372, 375, 113 So. 2d 680, 683.

To like effect see: Woodall v. National Life & Accident Ins. Co., 269 Ala. 606, 114 So.2d 889; General Motors Acceptance Corp. v. Kendrick, 274 Ala. 566, 150 So.2d 185; Calvert Fire Ins. Co. v. Green, 278 Ala. 673, 180 So.2d 269.

". . . Where a contention is made that a person was driving an automobile with permission under such (omnibus) clause the burden is on the person so contending to establish clearly that there was such permission. . . . ." (Par. Added) Rector v. Robinson, 36 Ill.App. 2d 272, 183 N.E.2d 22, 24.

■ The words, "express permission," are clear and unambiguous. The burden was on the driver to establish that he was driving with "express permission" of the named insured. The driver failed to carry that burden and is not entitled to have Farm Bureau defend him or pay any judgment which may be recovered against him in the four actions at law.

Appellees rely on the proposition that the term "permission," as used in the omnibus clause of automobile liability policies, is generally construed to mean either express or implied permission, and also on the proposition that ambiguities in insurance policies will be construed most strongly against the insurer. It may be conceded that the propositions so relied on are correct statements of the law, but the authorities cited by appellees are not cases where the policy required that the additional driver have the "express permission" of the named insured.[1]

1. Appellees cite:
Harrison v. Densmore, 279 Ala. 190, 183 So.2d 787;
United Security Life Ins. Co. v. St. Clair, 41 Ala.App. 243, 130 So.2d 213;
Ocean Accident & Guarantee Corp. v. Bear, 220 Ala. 491, 125 So. 676;

State Farm Mutual Auto. Ins. Co. v. Williamson, 9 Cir., 331 F.2d 517;
Colonial Life & Acc. Ins. Co. v. Collins, 280 Ala. 373, 194 So.2d 532;
North British & Mercantile Ins. Co. v. Sciandra, 256 Ala. 409, 54 So.2d 764;

The fact that Farm Bureau paid the named insured and the lien holder for the damage to the Corvair does not compel Farm Bureau to assume liability for the different and separate risk of loss for bodily injury and property damage arising out of operation of the Corvair. Bendall v. Home Indemnity Co., 286 Ala. 146, 238 So.2d 177, syl. [4].

Neither do we think that liability to defend the driver can be placed on Farm Bureau on the ground that Farm Bureau is defending Debbie Newsome. She is named in the application as one of the drivers of the Corvair. Also, in the omnibus clause quoted above, the unqualified word "insured" includes the named insured and ". . . . also includes (2) his relatives . . . ." The named insured testified that Debbie Newsome is his daughter.

The evidence does show that Debbie Newsome gave her express permission for the driver to operate the Corvair at the time of the collision, but she is not the named insured and her express permission is not the express permission of the named insured which the policy requires.

The court erred in holding Farm Bureau liable to defend the driver. As it appears to us from this record, Government is liable to defend him.

Reversed and remanded.

SIMPSON, HARWOOD, BLOODWORTH and McCALL, JJ., concur.

Chatfield v. Farm Bureau Mut. Auto. Ins. Co., 4 Cir., 208 F.2d 250;

Alabama Farm Bureau Mut. Cas. Ins. Co. v. Robinson, 269 Ala. 346, 113 So. 2d 140;

Standard Acc. Ins. Co. v. New Amsterdam Cas. Co., 7 Cir., 249 F.2d 847;

Georgia Cas. Co. v. Waldman, 5 Cir., 53 F.2d 24;

Pennsylvania Thresherman & Farmers' Mut. Cas. Ins. Co. v. Crapet, 5 Cir., 199 F.2d 850.