243 So.2d 490

ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY, a Corporation,

v.

Winford MATTISON, Jr., a minor, et al.

6 Div. 794.

Supreme Court of Alabama.

Jan. 7, 1971.

Baker, McDaniel, Hall & Parsons, Birmingham, for appellant.

Francis H. Hare, Sr., Birmingham, for appellees Carolyn Morris, a minor, and Buck Morris.

HARWOOD, Justice.

The Alabama Farm Bureau Mutual Casualty Insurance Company, a Corporation, issued to Charles Thomas as the named insured, a policy of automobile casualty insurance. The policy afforded coverage on a 1964 Ford, two Buicks, and some eight or ten trucks.

Mr. Thomas operated a poultry farm. The trucks were used in the farm operations. One of the Buicks was used principally by Mr. Thomas, the other Buick by Mrs. Thomas, and the Ford by David Thomas, their son, it having been bought for David's use.

Winford Mattison, referred to in the testimony as "Junior" Mattison was a boyhood friend of David Thomas. They were both 16 years of age at the time of the automobile collision which is the basis of this proceeding. This collision occurred on a Saturday night.

Mattison worked at the Thomas' poultry farm about two afternoons per week, and usually on Saturdays. He performed various chores on the farm, and from time to time would be instructed by Mr. Thomas to go on various errands such as to a hardware store, or to a sawmill to pick up wood chips, etc.

In carrying out such errands Mattison would usually use one of the trucks, or if more convenient, he would use one of the Buicks or the Ford.

On the Saturday of the collision, David and Winford Mattison had worked at the poultry farm until about 4:00 P.M. They each then went their separate ways. That night they met in a poolroom by chance. After a short while they began driving around in the Ford, Winford Mattison driving the automobile with David's permission. They went to a football game where they remained for a short while, and to an ice cream stand, and were on their way to a skating rink when the Ford collided with another automobile. Their peregrinations on this night appear to have been jointly agreed upon.

Two people in the second automobile were injured in the collision. Suits were filed by parties claiming damages as a result of the accident, two of such suits naming Mattison as defendant, and two naming both Mattison and David Thomas as co-defendants.

The insurer filed a declaratory action seeking a judicial determination as to whether it was obligated to afford Mattison or David Thomas a defense of the suits or payment of any judgments that might be rendered.

In the declaratory proceedings it was the insurer's contention that it was under no duty or liability to either Mattison or David Thomas for the reason that at the time of the accident Mattison was driving the Ford without the express permission of Charles Thomas, the named insured, or of his spouse.

The pertinent provisions of the policy relative to insurer's contention of no obligation under the policy reads as follows:

## "DEFINITIONS—INSURING AGREEMENTS I AND II

"*Named Insured*—means the individual so designated in the declarations and also includes the spouse, if a resident of the same household.

"*Insured*—under Coverages A, B, C and C–1, the unqualified word 'insured' includes (1) the named insured, and also includes (2) his relatives, (3) any other person while using the automobile, provided the actual use of the automobile is with the express permission of the named insured, and (4) under Coverages A and B any person or organization legally responsible for the use thereof by an insured as defined under the three subsections above.

"*Relative*—means a relative of the named insured who is a resident of the same household."

In the hearing below Charles Thomas, the insured, testified that the Ford had been bought with the intention that it was to be used by his son David. He instructed David to be careful in operating the Ford, but nothing was ever said as to David permitting some one else to drive the Ford.

He knew that Mattison had used the Ford a few times during his work on the farm in going on errands, as well as the other vehicles.

He had observed Mattison driving the Ford in the daytime on weekends, accompanied by David, but had had no occasion to observe Mattison driving the Ford at night, but nothing was said by him to David relative to Mattison driving the Ford when not at work.

On the night of the accident David left the house and he did not recall David telling him where he was going, and on that night he did not expressly give Mattison permission to drive the Ford—nothing was said one way or the other.

Mattison testified that when he drove the Ford at night or on weekends he had never had occasion to ask Mr. Thomas' permission to drive the car, and never had occasion to talk to Mr. Thomas on the night of the accident relative to driving the automobile.

David Thomas likewise testified that his father had never said anything relative to his permitting other people to drive the Ford. The only instructions he had ever given him were to be careful. When Mattison was driving the Ford, which was always with his permission, he said nothing to him about the operation of the automobile as he knew Mattison was careful and there was no need to tell him how to drive. When they jointly decided to go to the skating rink, he did not tell Mattison how to get there as Mattison knew the way.

David also testified that he had permitted friends of his, other than Mattison, to drive the Ford on occasions.

The material question raised on this appeal is whether a permittee driver of an insured (as distinguished from the named insured), who is driving an insured automobile is entitled to coverage under an automobile liability policy which provides coverage to (1) the named insured, (2) relatives who are residents of the named insured's household, and (3) any other person using the automobile with the *express permission* of the named insured.

This identical question was before this court in the very recent case of Alabama Farm Bureau Mutual Casualty Ins. Co. v. Government Employees Insurance Company, and Joseph S. Szczepanski, etc., 286 Ala. 414, 240 So.2d 664, decided November 5, 1970.

In concluding that a driver of an automobile under such circumstances was not entitled to coverage, this court wrote:

"This provision is different from the omnibus clause in many policies which do not require the 'express permission' of the named insured but require merely the 'permission' of the named insured. The decision in the instant case turns on the construction and application of the words 'express permission.' Where only 'permission' is required, the courts have held that the permission is sufficient to provide coverage if the facts justify a finding that either express or implied permission had been granted by the named insured or other person authorized to grant permission. See 5 A.L.R. 2d 601.

\* \* \* \* \* \*

"The words, 'express permission,' are clear and unambiguous. The burden was on the driver to establish that he was driving with 'express permission' of the named insured. The driver failed to carry that burden and is not entitled to have Farm Bureau defend him or pay any judgment which may be recovered against him in the four actions at law."

Counsel for the appellees contend that:

"The evidence justifies the inference that Mr. Thomas, Sr., had expressly given Mattison a general permission to drive the car. In such event it is unnecessary for the express consent to be repeated for every specific trip."

With this contention, we cannot agree. The evidence shows that each time Mattison had driven any of the vehicles, either the trucks, Buicks, or the Ford, it had been under the instructions of Mr. Thomas to perform some act in connection with the operation of the poultry farm. Mattison apparently used whichever vehicle was most convenient for the purpose. We do not think that such instructions could be deemed to arise to a general permission to use the trucks or the Buicks at times other than in due course of carrying out Mr. Thomas' instructions. We see no basis to place the use of the Ford in a different category.

As further stated in Alabama Farm Bureau Mutual Casualty Insurance Co. v. Government Employees Insurance Co., etc., supra:

"In Webster's Third New International Dictionary, Copyright 1961, page 803,

**546**

the adjective, 'express,' is defined as follows:

'1 a: directly and distinctly stated or expressed rather than implied or left to inference: not dubious or ambiguous: DEFINITE, CLEAR, EXPLICIT, UNMISTAKABLE.'

"Another court has said:

'Express permission would necessarily include prior knowledge of the intended use and an affirmative and active consent to it. * * *'

Bradford v. Sargent, 135 Cal.App. 324, 27 P.2d 93, 96."

There was no evidence presented in the hearing below that Charles Thomas, the named insured, or his spouse affirmatively gave any direct or distinct permission to drive the Ford on the Saturday night of the collision.

The Chancellor therefore erred in adjudging and decreeing that the appellant-insurer was liable under the coverage provisions of its policy to afford representation in the pending cases to Winford Mattison, Jr., and to pay, within the limits of the policy contract, any damages assessed against him in any of said suits against Mattison. Accordingly, the decree and judgment is due to be, and hereby is, reversed and rendered in this aspect.

█  It being clear under the evidence that David Thomas, the minor son of the named insured Charles Thomas, and residing in his household, is insured under the policy, that part of the decree ordering and adjudging that the appellant-insurer is liable under the policy to afford representation to David Thomas, and to pay, within the limits of the policy, any damages that may be assessed against David Thomas, is due to be, and is, affirmed.

Affirmed in part, reversed and rendered in part.

LAWSON, MERRILL, MADDOX and McCALL, JJ., concur.