352 So.2d 1097 (1977)
Joyce BILLUPS et al.
v.
ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY, a corporation, et al.
SC 2159.
Supreme Court of Alabama.
September 30, 1977.
Rehearing Denied December 22, 1977.
*1098 Jack Clarke, of Henley & Clarke, Northport, for appellants.
Olin W. Zeanah and William J. Donald, III, of Zeanah, Donald & Hust, Tuscaloosa, for appellees.
ALMON, Justice.
Alabama Farm Bureau Mutual Casualty Insurance Company and Federated Guaranty Mutual Insurance Company, appellees, brought this action seeking a declaratory judgment to determine their obligations to pay benefits to any of the appellants. From the trial court decree denying medical payments coverage and uninsured motorist coverage, appellants take this appeal.
The facts of this case arise out of an automobile accident on February 8, 1975, in Jefferson County, Alabama. The accident *1099 involved a 1970 Plymouth automobile, owned by Lucille Conner and driven by Jessie Silver, Jr., and an automobile driven by Henry Lee Moore, an uninsured motorist. In the 1970 Plymouth with Jessie Silver, Jr., were Debbie Billups, Joyce Billups, Melanie Carol Billups, and Curtis Conner, son of Lucille Conner. As a result of the accident, Jessie Silver, Jr., and Debbie Billups were killed. The other occupants received varying degrees of injuries.
At the time of the accident there was in force and effect on the 1970 Plymouth automobile a policy of liability insurance issued by Federated Guaranty to Lucille Conner as the named insured. At the same time there was in force and effect a policy of insurance issued by Alabama Farm Bureau to Lucille Conner as the named insured on a 1973 Chevrolet Impala automobile. The issue in this case is whether Joyce Billups, Melanie Carol Billups, the estate of Debbie Billups, and the estate of Jessie Silver, Jr., are entitled to medical coverage and uninsured motorist coverage under either of the automobile liability policies issued to Lucille Conner. The coverage of Curtis Conner under the policies is not at issue.
The two policies in question are identical except for the automobile covered. The relevant provisions are as follows:

"INSURING AGREEMENT I THE AUTOMOBILE ******
"Coverage C Medical Payments
"To pay the reasonable expense of necessary medical, dental, x-ray, eyeglasses, hearing aids, surgical, ambulance, hospital, professional nursing, funeral services and prosthetic devices, all incurred within one year from date of accident to or for:
"(Division 1) each person who sustains bodily injury, sickness or a disease caused by accident while occupying:
"(a) the automobile described in the declarations, if the injury arises out of the use thereof by the named insured or spouse if a resident of the same household, or with the express permission of either. (emphasis added).
******
"(Division 2) each insured who sustains bodily injury, sickness or disease caused by accident, while in or upon, or while entering into or alighting from, or through being struck by, an automobile. ******
"(Division 3) Any person occupying the described automobile who sustains bodily injury caused by accident, if such vehicle is being used by an insured; * * *. ******

"DEFINITIONS  INSURING AGREEMENTS I AND II ******

"Insured  under Coverages A, B, C, C-1, and C-2, the unqualified word `insured' includes (1) the named insured, and also includes (2) his relatives, (3) any other person while using the automobile, provided the actual use of the automobile is with the express permission of the named insured, and (4) under Coverages A and B any person or organization legally responsible for the use thereof by an insured as defined under the three subsections above. (emphasis added).
******
"Use  means the actual manual and physical driving of the automobile (emphasis added).

"INSURING AGREEMENT III UNINSURED MOTORIST
"Coverage MDamages for Bodily Injury Caused by Uninsured Automobiles.
"The Company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages except punitive damages (other than for death) from the owner or operator of an uninsured automobile * * *
******

"DEFINITIONSINSURING AGREEMENT III
"The definitions of `Automobile, Temporary Substitute Automobile, Bodily Injury *1100 and Use' under Insuring Agreements I and II apply to Insuring Agreement III. "(a) Insured. The unqualified word `Insured' means

"(1) the First Named Insured as stated in the policy and residents of the same household, the spouse of any such Named Insured and relative of either;
"(2) any other person while occupying an insured automobile.
******
"(b) Insured Automobile ******
"but the term `insured automobile' shall not include: * * * * * * "(ii) under subparagraphs (1) and (2) above, if the insured named in the declarations of the policy is an individual or husband and wife who are residents of the same household, an automobile unless being used by or with the express permission of such Named Insured or such
spouse; [emphasis added].
* * * * *"

I

UNINSURED MOTORIST COVERAGE
The court found that the 1970 Plymouth automobile was not used with the express permission of the named insured, Lucille Conner, or her spouse, and that the appellants were not entitled to uninsured motorist coverage under the Conner policies.
The appellants contend that the express permission provision of the policies conflicts with the Alabama Motor Vehicle Safety-Responsibility Act[1] and is therefore void. We agree insofar as it pertains to uninsured motorist coverage.
Tit. 36, § 74(62) (mandatory liability coverage) provides in part as follows:
"(a) A `motor vehicle liability policy' as said term is used in this subdivision shall mean an owner's or an operator's policy of liability insurance, certified as provided... as proof of financial responsibility, and issued . . . by an insurance carrier . . . to or for the benefit of the person named therein as insured.
"(b) Such owner's policy of liability insurance:. . . . .
"(2) shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle. . . ." (Emphasis added).
Tit. 36, § 74(62a) (uninsured motorist coverage) provides in part as follows:
"No automobile liability . . policy shall be delivered or issued . . . in this state . . . unless coverage is provided therein . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . ."
The question is the effect the statutory provisions have upon the scope of the uninsured motorist coverage under the policy. This court has held that the scope of uninsured motorist coverage must be coextensive with liability coverage. State Farm Automobile Insurance Co. v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974). In Reaves, supra, we stated that, "once an automobile liability policy is issued extending coverage to a certain class of insureds under such a clause, uninsured motorist coverage must be offered to cover the same class of insureds." 292 Ala. at 223, 292 So.2d at 99.
§ 74(62) is unambiguous in mandating the extension of liability insurance coverage to persons using an insured vehicle with the express or implied permission of the named insured. Accordingly, the uninsured motorist coverage must be as broad. Reaves, supra.
*1101 The insurance policies in question extend uninsured motorist coverage to "any other person while occupying an insured automobile." See, Definitions  Insuring Agreement III, supra. Under the policy terms, an insured automobile is one used with the express permission of the named insured or his spouse. See, Definitions  Insuring Agreement III, supra.
Restricting uninsured motorist coverage to occupants of an automobile only if the automobile is used with the express permission of the named insured is repugnant to the statutory requirements and the decisions of this court. Reading the statutory requirement into the policy, American Southern Insurance Co. v. Dime Taxi Service, Inc., 275 Ala. 51, 151 So.2d 783 (1963), the policy must afford uninsured motorist coverage to the occupants of the automobile if it was used with the express or implied permission of the named insured. Tit. 36, § 74(62); State Farm Automobile Ins. Co. v. Reaves, supra.
The trial court did not make a factual finding as to whether Jessie Silver, Jr., used the automobile with Lucille Conner's or her husband's implied permission. Therefore, we remand to the trial court for such a determination.
The appellees reliance on past cases of this court upholding the express permission provisions contained in the policies in question, Alabama Farm Bureau Mutual Cas. Ins. Co. v. Government Employees Ins. Co., 286 Ala. 414, 240 So.2d 664 (1970); Alabama Farm Bureau Mutual Cas. Ins. Co. v. Mattison, 286 Ala. 541, 243 So.2d 490 (1970); Crawley v. Alabama Farm Bureau Mutual Cas. Ins. Co., 295 Ala. 226, 326 So.2d 718 (1976), is without merit. In none of the mentioned cases was there a challenge to the express permission provision in the policies on the ground that it conflicted with the Alabama Motor Vehicle Safety-Responsibility Act. Each case was decided on terms of policy language construction alone. To the extent that these cases construe the meaning and effect of a valid express permission provision, they remain good law. However, future cases involving the scope of uninsured motorist coverage must be read in light of the Alabama Motor Vehicle Safety-Responsibility Act and today's decision.

II

MEDICAL COVERAGE
Our decision regarding the uninsured motorist coverage required by our statutes is not dispositive of whether the appellants are entitled to medical payments coverage under the policies in question. The Alabama Motor Vehicle Safety-Responsibility Act mandates automobile liability and uninsured motorist coverage only. It does not require medical payments coverage. Thus, the issue of whether appellants are entitled to medical payments coverage is to be determined by the language of the policy.
Under the terms of the policies, medical payments coverage is extended to occupants of an insured automobile if the automobile is used by or with the express permission of the named insured or his spouse. The policy defines "use" as the "actual manual and physical driving of the automobile." See, Definitions  Insuring Agreements I and II, supra. The issue is whether Jessie Silver, Jr., was "using" the automobile with the express permission of Lucille Conner or her husband.
The facts show that the 1970 Plymouth automobile involved in this case was purchased for Curtis Conner by Richard Conner, his father, in November, 1974. Lucille Conner acquired the Federated Guaranty policy covering the automobile and paid the premium payments. The insurance company charged a higher premium for the 1970 Plymouth because Curtis was a teenager and was the principal driver.
At the time of the accident Curtis Conner was a fulltime student at Stillman College in Tuscaloosa, Alabama. Curtis Conner primarily used the car for travel to school and back from his home in Aliceville. However, Curtis was not restricted in his use of the car, except the admonishment by his father to "drive carefully." There was no restriction *1102 placed on Curtis regarding his allowing other people to drive the car.
On February 8, 1975, the Plymouth automobile was driven to Bessemer, Alabama, by Jessie Silver, Jr. As indicated earlier, Curtis Conner, Joyce Billups, Melanie Carol Billups and Debbie Billups were riding as passengers. They departed from the home of Eunice Billups (the father of the three Billups girls) in Tuscaloosa. The destination of the trip was the home of Eunice Billups' brother in Bessemer, Alabama. There, Curtis Conner was to see an Inez Billups, a girlfriend. The accident occurred that same day in the late evening when Jessie Silver, Jr., was driving on the return trip. Curtis Conner was asleep and lying in the lap of Melanie Carol Billups when the collision occurred.
According to the testimony of the occupants surviving the collision, Jessie Silver, Jr., was driving at the request of Curtis Conner because Conner was not familiar with the interstate highway on which they traveled. Curtis had gotten lost on an earlier trip to Bessemer.
There is no doubt that Jessie Silver, Jr., did not have the express permission of Lucille Conner or her husband. In fact, the appellants do not so contend.
The appellants argue several other theories concerning why they are entitled to medical payments coverage. We consider each in turn.
Appellants contend they qualify for medical payments coverage because they were occupants of a vehicle used by an insured; i.e., Curtis Conner. See, Coverage C Medical Payments (Division 3), supra. The heart of appellants' argument is that the word "use" is ambiguous, and therefore mere occupancy of the vehicle by Curtis Conner is sufficient to constitute use by him, thereby making the automobile an insured automobile under the terms of the policy.
This court adheres to the well-known rules of construction that ambiguities in a contract of insurance will be construed against the insurer and in favor of the insured. Life Insurance Company of Georgia v. Miller, 292 Ala. 525, 296 So.2d 900 (1974); and authorities cited therein. However, when there is no ambiguity, the court will not indulge in construction favorable to the insured. Green v. Merrill, 293 Ala. 628, 308 So.2d 702 (1975). Ambiguities will not be inserted, by strained and twisted reasoning, into contracts where no such ambiguities exist. Alabama Farm Bureau Mutual Casualty Insurance Company v. Goodman, 279 Ala. 538, 188 So.2d 268 (1966); Michigan Mutual Liability Co. v. Carroll, 271 Ala. 404, 123 So.2d 920 (1960).
The word "use" in these policies is not ambiguous. The policy clearly defines "use" as the actual manual and physical driving of the automobile. Thus, for appellants to qualify for medical payments coverage, Curtis Conner must have been driving the automobile. Such not being the case, the appellants' reliance on the cases of Hardware Mutual Casualty Co. v. Mitnick, 180 Md. 604, 26 A.2d 393 (1942) and Baudin v. Traders & General Insurance Co., 201 So.2d 379 (La.App., 1967) is unfounded although each case held that activities other than actual driving of the automobile constituted "use" within the terms of the policy; in neither of these cases did the policy itself define the word "use."
Appellants also contend that Lucille Conner and Richard Conner had expressly authorized Curtis Conner to use the automobile, and his express permission to Jessie Silver, Jr., on the day in question operated as the named insured's express permission within the terms of the policy. This issue has been considered before by this court and it has consistently held that the express permission clause cannot be satisfied by implication. In Crawley v. Alabama Farm Bureau Mutual Casualty Insurance Co., supra, we stated the following:
"Our cases have been consistent in making a distinction between policy provisions which require the `permission' of the insured and those which require the `express permission' of the named insured. In Royal Indemnity Company v. Pearson, 287 Ala. 1, 8, 246 So.2d 652, 658 *1103 (1971), this court, speaking through Justice Lawson, said:
"`Where, as here, only "permission" is required in the omnibus clause, we have followed the general rule to the effect that "permission" is sufficient to provide coverage to the user if the facts justify a finding that either express or implied permission has been granted by the named insured.Alabama Farm Bureau Mut. Cas. Ins. Co. v. Robinson, 269 Ala. 346, 113 So.2d 140; Harrison v. Densmore, 279 Ala. 190,183 So.2d 787; American Mutual Liability Ins. Co. v. Milwaukee Ins. Co. of Milwaukee, 283 Ala. 414, 218 So.2d 129; Pettis v. State Farm Mut. Auto. Ins. Co., 286 Ala. 344, 239 So.2d 772. But where the words "express permission" are used in the omnibus clause, the burden is on the user to establish that he was driving with the express permission of the named insured. Alabama Farm Bureau Mut. Cas. Ins. Co. v. Government Employees Ins. Co., 286 Ala. 414, 240 So.2d 664; Alabama Farm Bureau Mut. Cas. Ins. Co. v. Mattison, 286 Ala. 541, 242 So.2d 490.'"
As stated earlier, these cases are no longer controlling in regard to automobile liability or uninsured motorist coverage because of statutory requirements. However, to the extent that the express permission provisions limit medical payments coverage, these cases are still controlling.
Lastly, appellants argue that Curtis Conner was a named insured under the Federated Guaranty policy covering the 1970 Plymouth automobile because the insurance company charged a specific higher premium due to Curtis Conner's being the regular user of the automobile. Therefore, appellants argue, the express permission of Curtis Conner is the express permission of the named insured within the terms of the policy.[2] Appellants rely on the case of Dixie Auto Insurance Co. v. Safeco Insurance Co. of America, 292 Ala. 358, 294 So.2d 736 (1974).
In Dixie, this court affirmed a trial court's reformation of an automobile liability policy to change the named insured on the insurance policy. The facts in that case were that a Mrs. Brittain obtained a policy of insurance on a 1964 Chevrolet owned and operated by her son, Barry Brittain. There was no question that Barry Brittain was the true owner; he paid for the car, it was registered in his name, and he purchased the tag for the car. The policy of insurance was in his mother's name because she understood "it had to be," but Barry paid the premiums.
The facts in this case are substantially different. Curtis Conner did not own the 1970 Plymouth. His parents purchased the car, paid the insurance premiums, and paid for all maintenance, including almost all gas and oil. There is nothing to indicate that the Conners intended Curtis to be the named insured allowing a court to grant reformation. North Carolina Mutual Life Insurance Co. v. Martin, 223 Ala. 104, 134 So. 850 (1931); American Trader's National Bank v. Henderson, 222 Ala. 426, 133 So. 36 (1931). In addition, the record does not indicate that the appellants requested reformation of the policy by the trial court, and the trial court made no ruling on reformation. Accordingly, we find all of appellants' arguments concerning medical payments coverage are without merit.

III
On remand, the trial court must determine if Jessie Silver, Jr., used the automobile with the implied permission of Lucille Conner or her husband. If the trial court so finds, the final issue is whether appellants can "stack" uninsured motorist coverage under the Alabama Farm Bureau policy covering a 1973 Chevrolet Impala onto the coverage under the Federated Guaranty policy, both owned by Lucille Conner.
As we stated in Lambert v. Mutual Insurance Company, 331 So.2d 260 (Ala., 1976):

*1104 "Our previous Alabama cases allowing stacking have fallen generally into two separate categories.
"This Court first allowed stacking in a case in which the insured passenger sought to stack coverage under his own personal uninsured motorist policy onto coverage under a policy owned by the driver. In Safeco Ins. Co. of America v. Jones, 286 Ala. 606, 243 So.2d 736 (1970), this Court held that the passenger, who was injured in a collision with an uninsured motorist, was not only entitled to coverage under his own uninsured motorist policy but was also entitled to coverage under the driver's policy.
"Under the second category of cases in which this Court has permitted stacking, the injured party seeks to stack coverages under separate uninsured motorist coverages on multiple vehicles insured under one policy which lists him as the named insured. In Employers Liab. Assurance Corp. v. Jackson, 289 Ala. 673, 270 So.2d 806 (1972), the doctrine of stacking coverages was extended to cover this second category of cases. Under the rule set out in Jackson, the insured is permitted to stack benefits under the uninsured motorist provisions of his personal policy where he has paid separate premiums for each vehicle insured under one multi-vehicle policy." 331 So.2d at 262.
The rationale of our decisions allowing stacking is that this court is simply honoring the reasonable expectation of the "named insured" that his payment of an additional premium will result in increased coverage. Lambert, supra. In Lambert, we quoted with approval and adopted the reasoning of two other jurisdictions in the cases of Sturdy v. Allied Mut. Ins. Co., 203 Kan. 783, 457 P.2d 34 (1969) and Cunningham v. Ins. Co. of North America, 213 Va. 72, 189 S.E.2d 832 (1972), distinguishing between two classes of persons for the purpose of stacking insurance coverage. An insured of the first class, consisting of the named insured and any relative, is entitled to stack coverages. An insured of the second class, consisting of permissive users of the vehicle and any occupants, is not so entitled. This classification is consistent with reasonable expectations of the parties to the contract, the named insured and the insurance company. In Lambert, we expressly declined to extend to permissive users of automobiles the privilege of stacking multi-vehicle coverage under policies not owned by them. We adhere to that decision and find that it controls in this instance.
The decision of the trial court is hereby affirmed in part, reversed in part, and remanded.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C. J., and BLOODWORTH and EMBRY, JJ., concur.
JONES, J., concurs specially.
JONES, Justice (concurring specially)
I concur with the opinion except as to the stacking issue. As to this issue I concur in the result. See my special concurring opinion in Lambert v. Liberty Mutual Insurance Company, 331 So.2d 260 (Ala., 1976).
NOTES
[1] Tit. 36, § 74(42)-74(83), Code of Alabama 1940, Recompiled 1958.
[2] By the terms of the policy, Lucille Conner is the only named insured.