ALMON, Justice.
This is a declaratory judgment action filed by Alabama Farm Bureau Mutual Casualty Insurance Company, Inc., to determine coverage under an insurance policy. The trial court held that the driver of the vehicle was using it with the express permission of the owner, the named insured under Farm Bureau’s policy. We affirm.
James Robinson worked as a farm hand for Bobby Daughtry. On the night of September 28, 1979, Robinson used a one-ton pickup truck belonging to Daughtry to tow his (Robinson’s) wife’s car home. The car came loose and swerved into the oncoming lane, hitting the car driven by Charles Walker, Jr., and Jeffrey Scott Hudson. Both young men were killed.
Prior to the accident, Daughtry had been leaving the truck with Robinson frequently for at least two reasons: to prevent thefts of tools from the truck and to give Robinson transportation to and from Daughtry’s farm. The question presented is whether Daughtry gave Robinson permission to use the truck for his own personal use. This question arises because Daughtry’s insurance policy with Farm Bureau extends coverage to Daughtry as the named insured, to his relatives, and to “any other person while using the automobile, provided the actual use of the automobile is with the express permission of the named insured.”
This clause in similar Farm Bureau policies has been construed by this Court in Crawley v. Alabama Farm Bureau Mutual Casualty Insurance Co., 295 Ala. 226, 326 So.2d 718 (1976); Alabama Farm Bureau Mutual Casualty Insurance Co. v. Mattison, 286 Ala. 541, 243 So.2d 490 (1971); Alabama Farm Bureau Mutual Casualty Insurance Co. v. Government Employees Insurance Co., 286 Ala. 414, 240 So.2d 664 (1970). In Crawley, supra, the driver had the express permission of a business partner of the named insured, but the trial court held the driver was not covered. This Court affirmed, holding that the partner’s permission would have sufficed if the partnership had been the named insured and reserving the question regarding a case where the *1209 evidence showed that the insurer knew the truck was used primarily in the partnership business. In Mattison, supra, the permission of the named insured’s son did not give the driver coverage even though he had the general permission of the named insured to use the car during working hours. In Government Employees Insurance Co., supra, the permission of the named insured’s daughter did not extend coverage to the driver.
In this case the permission came directly from the named insured, so the above-cited cases are not entirely apposite. The question here is whether the record contains evidence to support the judgment[1] that Robinson had Daughtry’s express permission to use the truck for his personal use. We find no evidence of permission to use the truck for this specific outing, so the question is whether Daughtry gave Robinson permission to use the truck whenever he wanted or needed to.
Both Robinson and Daughtry denied that such general permission was ever given. The tenor of their testimony indicates, however, that although they were aligned with the boys’ fathers as parties defendant, their interests were somewhat different. Indeed, Farm Bureau presented its evidence by calling Daughtry and Robinson as “adverse parties.” Daughtry stood to face a substantial claim against his insurance coverage even though neither he nor a member of his family was subject to personal liability. Moreover, Daughtry was a Farm Bureau agent prior to, at the time of, and for some time after the accident; he was the agent on his own policy. The record does not indicate whether Robinson has insurance of his own, but we do note that he is relatively uneducated and susceptible to influence from his employer Daughtry. Daughtry continued to employ him until at least the time of the trial, so he had reason to be loyal to Daughtry. Appellee Walker states, and there is some indication in the record, that an attorney representing Farm Bureau had previously defended Robinson and Daughtry in cases brought by Hudson and Walker.
We recite these matters of record indicating possible bias of Robinson and Daughtry in favor of Farm Bureau to show that the trial court might have been justified in disregarding their testimony that Robinson did not have permission to use the vehicle except to go to and from work. Although the evidence to the contrary was indirect and circumstantial, we do not agree with Farm Bureau that it. goes only to show implied permission. We find in the record evidence from which a reasonable inference can be drawn that Robinson had Daughtry’s express permission to use the truck for his personal use.
Robinson testified that his own truck had not been in working condition for about two months prior to the accident. Daughtry knew this, as evidenced by his testimony that “[t]he only reason he had it [Daugh-try’s truck] then was because he was in a tight [i.e., because he had no transportation].” The state trooper who interviewed Robinson the day after the accident testified:
“He said that his personal vehicle was down, and that Mr. Daughtry had loaned him this vehicle to use. That he loaned him this vehicle to use while his car was down, and that he could use his vehicle to go back and forth from his farm to where he lives.”
The other witness for the defense was Zan-der Gosha, a long-time friend of Robinson. He testified that Robinson drove Daugh-try’s truck to his house, in a different county from the one where Robinson lived and worked, one Sunday morning. His testimony included the following:
“He said, ‘this is what the boss man got me to get around in.’
“THE COURT: ‘To get around in to work?’
“A. He didn’t tell me what, he didn’t say if he was going or coming to work, he *1210 just said, ‘this is what he got me to get around in.’
“THE COURT: Did he tell you he got it for the purpose of going back and forth to work on the job?
“A. Listen, I done stated myself as best I could. He didn’t say ‘he got me the truck for work,’ he said, ‘this is what he got me to get around in.’ ”
We do not mean to imply that a driver’s statements will normally suffice to indicate the named insured gave express permission, but only that in this case indirect evidence of such permission is competent and relevant.
There was other evidence contributing to the inference that Daughtry gave Robinson express permission to use the truck other than simply for work-related purposes. Before he started letting Robinson use the truck, Daughtry asked a Farm Bureau adjuster if Robinson’s use of the truck would be covered, and was told it would be. Robinson used the truck to go to the store and to haul watermelons to his hogs; there was evidence that these trips were on his way home from work or were connected with his work during the day, but the evidence would also support the conclusion that some of these trips were not connected to work. Furthermore, the testimony of Robinson and Daughtry contains inconsistencies and indications of reluctance that tend to impeach their statement that Robinson had no permission to use the truck other than for work-related purposes.
This is a close case, but because we cannot say the trial court’s judgment is plainly and palpably wrong or manifestly unjust, we affirm on the basis of the ore tenus rule.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EM-BRY and ADAMS, JJ., concur.

. The case was tried with an advisory jury, which found that Robinson was operating the truck with the express permission of Daughtry at the time of the accident; the court entered a judgment making this same finding.