TORBERT, Chief Justice.
On July 14, 1984, an automobile owned by Deloris Beverly and operated by her daughter, Meshelle Beverly, was traveling north on Highway 221 in Wilcox County, Alabama, when a vehicle traveling south forced the Beverly vehicle off the road. Meshelle Beverly suffered personal injuries as a result of the ensuing crash. The vehicle that ran her off the road was owned by Theodore Manzie and was operated by defendant Keith Pharr.
The Beverlys subsequently sued Manzie and Pharr, seeking damages for personal injuries to Meshelle Beverly and for property damage to the automobile of Deloris Beverly. The complaint alleged that the injuries and the property damage resulted from the negligent operation of Manzie’s automobile by Pharr. Various counts of the complaint alleged negligent entrustment by Manzie and alleged theories based on an agency relationship between the two defendants.
At the time of the accident, Manzie was insured by Federated Guaranty Mutual In *809 surance Company (hereinafter “Federated”). The terms of his liability policy require Federated to defend any suits against an insured for bodily injuries or property damages and to pay any damages due from an insured resulting from the use of the insured vehicle. The policy defines “insured” as follows:
“[T]he unqualified word ‘insured’ includes (1) the named insured, and also includes (2) his relatives, (3) any other person while using the automobile, provided the actual use of the automobile is with the express permission of the named insured_” (Emphasis added).
After the Beverlys filed their complaint, Federated instituted a declaratory judgment action against Pharr and the Beverlys for a determination of its obligation to defend and insure Pharr, alleging that at the time of the accident Pharr was driving the Manzie automobile without Manzie’s express permission to do so. The parties agreed to try the damages suit and the declaratory judgment action at the same time before the same jury.
At trial, at the close of the Beverlys’ evidence, the trial court granted Manzie’s motion for a directed verdict as to all claims against him. The court denied Federated’s motion for a directed verdict on the declaratory judgment issue of permissive use. The case was submitted to the jury with verdict forms, as well as a special interrogatory relating to the permissive nature of Pharr’s operation of the Manzie vehicle at the time of the accident. The jury subsequently returned its verdict on the interrogatory by affirmatively answering that Pharr was driving the Manzie vehicle with Manzie’s consent and further awarded damages against Pharr and in favor of Meshelle Beverly for $25,000.00 and in favor of Deloris Beverly for $5,000.00. Pharr and Federated appeal.[1]
I
Federated first argues that the trial court erred in denying its motions for directed verdict, judgment notwithstanding the verdict, and for new trial on the declaratory judgment issue of permissive use. Federated maintains that there is no evidence that Manzie gave express permission to Pharr to drive Manzie’s automobile on the date of the accident.
In Alabama Farm Bureau Mutual Casualty Ins. Co. v. Government Employees Ins. Co., 286 Ala. 414, 240 So.2d 664 (1970), this Court stated, with respect to the permission clause of the policy at issue in that case:
“It will be noted that in the ‘omnibus clause’ quoted above, in provision (3), liability coverage is extended to any other person using the automobile ‘... with the express permission of the named insured.’
“This provision is different from the omnibus clause in many policies which do not require the ‘express permission’ of the named insured but require merely the ‘permission’ of the named insured. The decision in the instant case turns on the construction and application of the words ‘express permission.’ Where only ‘permission’ is required, the courts have held that the permission is sufficient to provide coverage if the facts justify a finding that either express or implied permission had been granted by the named insured or other person authorized to grant permission. See 5 A.L.R. 2d 601. One court has said:
“ ‘Under the Virginia statute, the permission of an assured in a liability insurance policy, to bind the insurance company, may be either express or implied. To be express, it must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference. On the other hand, the correlative word, “implied,” as defined in Webster’s New International Dictionary (2d Ed.), means “inferential or tacitly conceded.” It involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of *810 objection under circumstances signifying assent. An implied permission is not, therefore, confined alone to affirmative action.’ Hinton v. Indemnity Ins. Co., 175 Va. 205, 213, 214, 8 S.E.2d 279, 283 [(1940)].
“In Webster’s Third New International Dictionary, Copyright 1961, page 803, the adjective, ‘express,’ is defined as follows:
“ ‘la: directly and distinctly stated or expressed rather than implied or left to inference: not dubious, or ambiguous: DEFINITE, CLEAR, EXPLICIT, UNMISTAKABLE.’
“Another court has said:
“ ‘Express permission would necessarily include prior knowledge of the intended use and an affirmative and active consent to it.. ..’ Bradford v. Sargent, 135 Cal.App. 324, 27 P.2d 93, 96 [(1933)].”
286 Ala. at 418, 240 So.2d at 667-68. See also, Alabama Farm Bureau Mutual Cas. Ins. Co. v. Hudson, 432 So.2d 1208 (Ala.1983); Crawley v. Alabama Farm Bureau Mutual Cas. Ins. Co., 295 Ala. 226, 326 So.2d 718 (1976); Alabama Farm Bureau Mutual Cos. Ins. Co. v. Mattison, 286 Ala.541, 243 So.2d 490 (1971).
In the present case, the evidence was in dispute as to whether Pharr was driving Manzie’s automobile with Manzie’s express consent. Robert Woods testified that, on the evening of the accident, he saw Pharr and Manzie outside a local store and heard Pharr ask Manzie for Manzie’s car keys. Woods further testified that Manzie threw his car keys to Pharr and “told him to go ahead, man.” Woods admitted on cross-examination that he left the store before Pharr left, and that he never actually saw Pharr drive away in Manzie’s car. He did state that he saw Pharr driving Manzie’s car on the day of the accident.
The testimony of Roy Rogers, a defense witness, tended to contradict that of Woods. Rogers testified that on the day of the accident he rode to “Powell’s Grocery” with Manzie in Manzie’s car. He stated that he saw Pharr at the store but never heard any conversation between Manzie and Pharr and never saw Manzie throw his car keys to Pharr. Rogers further testified that he and Manzie went into the store and that when they came out, Manzie’s car was gone and “somebody told us Keith [Pharr] got his [Manzie’s] car and gone.”
The Beverlys called several other witnesses, whose testimony adds credibility to Woods’s testimony that Manzie gave Pharr permission to drive his car. Linda Hartley testified that Keith Pharr is her brother and that Pharr and Manzie had been friends all their school life. Martha Mack also testified that Manzie and Pharr had been good friends all through high school. Theresa Pharr testified that Keith Pharr is her uncle and that on the evening after the accident, Manzie drove Keith Pharr to the local bus station.
We conclude that there was sufficient evidence that Pharr was using Man-zie’s car with Manzie’s express permission to warrant submitting the issue to the jury. Woods’s testimony was positive and direct that Manzie gave express permission to Pharr to use his car. Although, standing alone, the other witnesses’ testimony would be insufficient to establish the existence of express permission, that testimony does lend credibility to Woods’ testimony, in that it showed that Manzie and Pharr were not mere strangers but were, in fact, good friends. We, therefore, hold that the trial court did not err in denying Federated’s motions for directed verdict, judgment notwithstanding the verdict, and new trial on the declaratory judgment issue of permissive use.
II.
After the trial of this case had begun, Federated filed a second complaint for declaratory judgment, alleging that its named insured, Theodore Manzie, had breached the “assistance and cooperation” clause of his insurance policy with Federated by refusing to attend the trial. The complaint sought a determination of whether Federated owed any defense or coverage to Man-zie and further sought a stay of the proceedings until such a determination was made. No responsive pleading was filed by Manzie or the Beverlys. The court pro *811 ceeded with the trial and summarily “denied” the complaint. After the trial of the Beverly suit and Federated’s first declaratory judgment action, and while the jury was deliberating, the trial court allowed Federated to introduce evidence relative to Manzie’s failure to cooperate with the defense of the Beverly suit and his refusal to attend the trial. After the jury returned its verdict, Federated made a motion for new trial and judgment notwithstanding the verdict on the grounds that the trial court erred in denying its motion for a stay and in “denying” its second complaint for declaratory judgment. These motions were denied.
Federated argues that the trial court erred in denying its motions, saying that its second complaint for a declaratory judgment presented a bona fide justiciable controversy and that the trial court erred to reversal in failing to make a declaration of rights of the parties and in summarily “denying” the complaint. Federated also maintains that it was entitled to a stay of the proceedings until such a declaration was made. Federated submits that the trial court had no discretionary power to deny its request for a stay order and that it is therefore entitled to a new trial of both the Beverly suit and its first declaratory judgment suit.
The Beverlys argue that Federated’s second complaint for declaratory judgment was not timely filed and that it is estopped from denying a defense due to Manzie’s lack of assistance and cooperation. They point out that the trial of both the Bever-lys’ personal injury suit and Federated’s original declaratory judgment action was in progress at the time Federated filed its second complaint for a declaratory judgment. The Beverlys also point out that both cases had been continued before because of Manzie’s failure to appear.
“Here we are dealing with the question of injunction wherein the court exercises a wide discretion by consideration of the relative conveniences and inconveniences which may result to the parties from granting or withholding the writ. Where it appears that greater damage is likely to result from granting than from withholding the relief, or where the inconveniences seem to be equally divided as between the parties, the injunction will be refused, and the parties left as they are until the legal right can be determined by law.” State Farm, Mut. Automobile Ins. Co. v. Cardwell, 250 Ala. 682, 685, 36 So.2d 75, 77 (1948). In Cardwell, a suit for declaratory judgment and injunction was filed by the defendant’s insurer just four days before the underlying personal injury suit was set for trial. The trial court was held to have properly exercised its discretion in refusing to enjoin prosecution of the personal injury suit. In State Farm Mut. Auto. Ins. Co. v. Sharpton, 259 Ala. 386, 66 So.2d 915 (1953), this Court affirmed a judgment denying the insurer’s application for a temporary injunction against personal injury suits against its insured pending the resolution of its declaratory judgment suit. That suit sought a declaration that the insurer had been discharged from liability to defend and indemnify its insured because of the insured’s alleged non-cooperation in the defense of the personal injury suits. The bill seeking an injunction was filed six days before the damages suits were set for trial and was heard just two days before those trials were to begin. This Court stated, “[T]he right of the plaintiffs to try those cases has been delayed long enough. The plaintiffs are in no way involved in the controversy as to the duty to defend those suits. By defending them, without being estopped thereby to insist on a want of cooperation as claimed in the instant suit, would not be as much of a burden on the insurer as it would burden these plaintiffs to wait until this [declaratory judgment] suit may drag to a conclusion_” Sharp-ton, 259 Ala. at 390-91, 66 So.2d at 918.
In the instant case, we hold that the trial court properly exercised its discretion in refusing to stay the trial of the Beverly suit and Federated’s original declaratory judgment suit, which the parties agreed would be tried together. Moreover, considering the facts that these cases had already been continued previously, that Federated had long since had notice of the matters alleged in its second complaint for declara *812 tory judgment, and that its complaint and stay motion were not filed until after the trial of these cases had begun, the trial court may have been in error to grant the requested stay. The court, therefore, properly denied Federated’s motions for judgment notwithstanding the verdict and new trial on the asserted grounds that it was entitled to a stay and was prejudiced by the denial of it. This is not to say, however, that Federated has waived its claim of noncooperation. As this Court stated in Sharpton:
“It would obviously be out of place here to try to analyze the evidence in respect to the claim made in the bill of want of cooperation. It should be considered in the light of the principle, which we think is sound, that for the insurer to defend those suits as its policy provides pending a determination of this suit, as to its duty in that respect when an injunction has been denied, is not a waiver of its claim in this suit of a want of co-operation, and its liability under its policy would be subject to the final determination of that question in this suit and unaffected thereby. The insurer’s defense of that suit should then be treated as compulsory. 45 C.J.S., Insurance, § 714, pages 687-688.”
Sharpton, 259 Ala. at 390, 66 So.2d at 918. (Emphasis added). Compare United States Fidelity & Guaranty Co. v. Remond, 221 Ala. 349, 129 So. 15 (1930), where it was held that the insurer waived any defense based on non-cooperation, because no question of non-cooperation was raised at the time of trial, there was no withdrawal from the defense, and no request for postponement, and the insurer proceeded to represent the insured throughout the trial.
In the present case, we conclude that Federated properly preserved its rights against its named insured, Theodore Manzie, by filing its second complaint for declaratory judgment at trial. Sharpton, supra. However, the issue of the propriety of the trial court’s action “denying” the complaint is not before this Court. No appeal could be taken, as there is no final judgment or order dismissing that law suit contained in the record. Hence, we decline to address whether the trial court erred m “denying” the second complaint for declaratory judgment. Suffice it to say, however, that even if it were error, Federated would not, as it argues in brief, be entitled to a reversal of the judgments entered in the Beverly suit and its first declaratory judgment suit.
In conclusion, we hold that the trial court did not err in denying Federated’s motions for directed verdict, judgment notwithstanding the verdict, and new trial on the declaratory judgment issue of the permissive use of Theodore Manzie’s automobile. Nor did the court err in denying Federated’s motion for a stay of the Beverly lawsuit and its first declaratory judgment action. The judgments below are therefore due to be, and they are hereby, affirmed.
APPEAL DISMISSED AS TO APPELLANT PHARR; OTHERWISE, AFFIRMED.
MADDOX, ALMON, BEATTY and HOUSTON, JJ., concur.

. Although Keith Pharr is named as an appellant, he has not filed any briefs nor made any arguments to this Court. Therefore, we dismiss his appeal for failure to prosecute.