THOMAS, Justice:
In this litigation we are dealing generally with Chapter 310, Florida Statutes, F.S.A., concerning pilot commissioners and pilots, and specially with Sections 310.03 and 310.04. The attack, however, is primarily directed at the latter.
It is necessary to go to the exhaustive, final decree to determine with preciseness the conclusions the chancellor reached and the facts on which they were based. Referring now to Section 310.04, it appears that the port of Jacksonville is entitled to nine pilots. Each port in the State may have at least one apprentice. Beyond that provision the language is quite awkward for it reads that “[t]here may be indentured in each port * * * one apprentice for every five, and three over five, or multiple of five licensed pilots of such port * * *.” When a person wishes to become an apprentice he must file with the board of pilot commissioners an application approved by a majority of the licensed pilots of the port, one of whom must signify his willingness to have the applicant indentured to him. Then, if there is a vacancy in the number of apprentices allotted to the port, the board of pilot commissioners must approve the application and the applicant, his parent or guardian approving, becomes indentured to the licensed pilot who has indicated agreement to the relationship. When vacancies occur in the pilot membership, the board is required to prefer, in the order of service, those persons who have served as apprentices.
It seems that the appellant, at the time, six years before, being persona grata to the nine pilots of Jacksonville, secured an appointment as apprentice, was indentured and approved by the board. This relationship continued for three years and a half when he aroused the ire of the pilots by advocating the increase of their number. Whereupon the licensed pilots reduced the pay of the appellant, and another apprentice who shared his idea, and advised the board that they no longer cared to work with these apprentices.
The board decided that the compensation should not he reduced as the appellant had a contract for four years as an apprentice. So the appellant served the remainder of the term and was then separated. Efforts at reinstatement failed and eventually this litigation seeking a declaratory decree was instituted.
The chancellor found that regardless of the requirement of Section 310.03 that the “board of pilot commissioners shall examine persons who may wish to be licensed as pilots, in all matters pertaining to the management of vessels; also in regard to their knowledge of the channel and the harbor where they wish to act as pilots” no such examination had been conducted for at least a decade. It was the custom to appoint as an apprentice pilot anyone whose application was endorsed by a majority of the licensed pilots if one of these agreed to have the applicant indentured to him and when a vacancy occurred in the pilot membership of the group of pilots to file it and proceed to the appointment of a successor without examining anyone but by merely selecting an apprentice giving preference first to those serving as such and next to those who had been apprentices but were no longer in such service.
The chancellor planted his conclusion squarely on the position that Section 310.04 is an unconstitutional delegation of power in violation of Section 1 of Article III, placing the legislative authority in the legislature, that is, more explicitly, whether or not the legislature may delegate to the licensed pilots the power to determine who may and who .may not succeed in an application for the place of apprentice pilot. *787 Albeit reluctantly he warded off any consideration on the basis that it was void as constituting a denial of equal protection of the laws, inasmuch as he thought the question had been resolved by the Supreme Court of the United States in Kotch v. Board of River Port Pilot Commissioners for Port of New Orleans, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093, and so it was. But the facts in that case relative to the selection of apprentices on the basis of friendship or consanguinity were more extreme than the manner of their selection in the present case, which seems to have disturbed the chancellor.
The court held that the legislature could not delegate to licensed pilots, who are private citizens, without any official status whatever, the power to control, probably by whim or caprice, the destiny of a person who wished eventually to serve as a bar pilot.
True, no criteria were specified for the selection of apprentices but we cannot agree that in the absence of such specification the section should be held unconstitutional for we are not convinced that at that stage criteria are needed. We cannot agree with the chancellor’s conclusion because we cannot accept his premise. To do so would require too much emphasis on the status of an apprentice, for he is only a person who under the tutelage of an experienced and qualified pilot is undertaking to learn the business or occupation of steering vessels safely in a given harbor.
We find nothing fundamentally wrong in the choice by the pilots, or by the pilot agreeing to have the understudy assigned, or apprenticed, to him, of a person related to him or liked by him. It seems to us only human that the choice be made with a view to a harmonious, friendly, mutually agreeable association. The test of delegation of power would occur when the person in question advanced to candidacy for license as a bar pilot. Then it is that he must be examined by the board of pilot commissioners “in all matters pertaining to the management of vessels; also in regard to * * * [his] knowledge of the channel and the harbor” where he wishes to act as pilot. If he is found qualified “to take command of all classes of vessels liable to enter that port and * * * throughly [sic] familiar with the channel and currents of the harbor” he may be licensed as a pilot of that port. Section 310.03, Florida Statutes, F.S.A.
The decision of this case and the validity of the plan should not be affected by the situation reflected in the comment of the chancellor that “despite the statutory requirement that the board of pilot commissioners ‘shall’ examine persons who wish to be licensed as pilots, the board has not, for at least the last decade, examined any person who wished to be licensed as a pilot.”
We cannot judge the merits of an act by failure to obey its mandate.
The decree is reversed.
ROBERTS, DREW, CALDWELL and HOBSON (Ret.), JJ., concur.
O’CONNELL, J., dissents with opinion.
THORNAL, C. J., dissents and agrees with O’CONNELL, J.