BEATTY, Justice.
Defendant Jerry Wayne Dutton appeals from the denial of his motion to vacate a judgment entered by the Jefferson County Circuit Court declaring that plaintiff, State Farm Mutual Automobile Insurance Company, was under no duty to pay any damages that might be awarded defendant in his separate action at law against certain parties insured by State Farm and that State Farm was not obligated to defend that action. We affirm.
In 1977, State Farm issued to Earnest F. Hallmark a policy of liability insurance covering a 1965 Ford automobile owned by Mr. Hallmark. Under the policy, State Farm agreed:
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
(A) bodily injury sustained by other persons, and
(B) property damage,
caused by accident arising out of the ownership, maintenance or use .. . of the owned motor vehicle; and to defend, . . . any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable hereunder . . . . [Emphasis added.]
The definitions section of the policy provides, inter alia, that
[T]he unqualified word “insured” includes
(1) the named insured, and
(2) if the named insured is a person or persons, also includes his or their spouse(s), if a resident of the same household, and
(3) if residents of the same household, the relatives of the first person named in the declarations, or of his spouse, and
(4) any other person while using the owned motor vehicle, PROVIDED THE OPERATION AND THE ACTUAL USE OF SUCH VEHICLE ARE WITH THE PERMISSION OF THE NAMED INSURED OR SUCH SPOUSE AND ARE WITHIN THE SCOPE OF SUCH PERMISSION.
The record discloses that on September 26, 1977, the insured automobile, a 1965 Ford Mustang, was being driven by one Karen Klein, a minor then fourteen years of age, when it was involved in a collision with a vehicle driven by Jerry Wayne Dut-ton. Miss Klein had acquired possession of the automobile earlier that day when Mike Hallmark, the seventeen year old son of Earnest Hallmark, lent it to her at her request, for her own purposes, without the knowledge or consent of his parents; indeed, both parents testified that Mike had been specifically told by them not to allow anyone else to use the car. Mike did not have his own key to the Mustang, and on the day of the accident was told by his mother not to drive the automobile “unless he just went to the store and back.” On March 15,. 1978, Dutton filed a suit for damages against Mike Hallmark and his brother Alfred Hallmark — the record owner of the vehicle — alleging that the Hallmarks negligently entrusted the car to Karen Klein at a time when they knew or, in the exercise of reasonable care, should have known, that Miss Klein was an incompetent driver. Prior to trial in the damage action, State Farm filed an action in equity against Dutton and the Hallmarks seeking a declaration that it had neither a duty to defend the Hallmarks in Dutton’s action for damages nor any obligation to pay any damages awarded Dutton in that case. Dutton now appeals from the trial court’s decree in favor of State Farm.
The' evidence clearly shows that Mike Hallmark was an “insured” under the terms of the liability policy, as he is the son of Earnest Hallmark (“the first person named in the declarations”) and was a resident of the same household as Earnest Hallmark. The issue on this appeal is whether the injuries sustained by Mr. Dutton in the collision with the Hallmark vehicle (driven *521 at the time by Karen Klein) were the result of an “accident arising out of the ownership, maintenance or use” by Mike Hallmark of the owned motor vehicle.
It is clear that there is coverage only if the alleged negligent entrustment of the Hallmark automobile by Mike, a bailee, can be said to be an incident of his ownership, maintenance, or use of the car. Mike did not own the vehicle, nor was he maintaining it; State Farm’s duty to defend Mike and to pay any damages awarded against him in the Dutton lawsuit is thus contingent on whether the accident arose out of Mike’s “use” of the Mustang. We hold that it did not.
This Court has not previously addressed the precise question posed in this case. However, it is claimed by the parties that the recent case of Cooter v. State Farm Fire and Casualty Co., Ala., 344 So.2d 496 (1977) provides some insight. In Cooter, the named insured under a homeowner's insurance policy allegedly negligently entrusted his automobile to his son. The policy contained an exclusion which was to the effect that there was no coverage for bodily injury or property damage arising out of the ownership, maintenance or use of a motor vehicle owned, operated by, rented or loaned to any insured. In affirming a declaratory judgment holding that there was no coverage under the homeowner’s policy, we stated:
We now consider State Farm’s second contention — that plaintiff’s injuries arose out of the insured’s ownership as well as his son’s use of the vehicle. This argument stands over against the appellant’s contention that liability is grounded upon negligent entrustment of the vehicle, not its negligent use by the one to whom it is entrusted. It is on this point that we agree with appellee, State Farm, and thus affirm the trial Court.
In the instant case, State Farm contends that Cooter supports a proposition of law that governs in this situation; that is, that one who negligently allows another to operate a motor vehicle is not using the vehicle, but is instead exercising an incident of ownership. Coverage would thus be afforded only if the owner negligently permitted someone else to use his car, and not if — as in this case — a mere bailee negligently entrusted the owner’s vehicle to a third party. Although at first glance we were impressed with the soundness of this line of argument, we are forced to reject it because the language utilized in Cooter does not affirmatively exclude the possibility that a bailee who entrusted a vehicle to a third party known to be incompetent could have been “using” the vehicle. In fact, both the Ohio Court of Appeals and the Ohio Supreme Court agreed that a bailee who allowed a friend to drive her father’s automobile was “using” the car, and she herself was benefited by the friend’s transporting her to school in the car. See Brown v. Kennedy, 49 N.E.2d 418 (Ohio App.1942), aff’d, 141 Ohio St. 457, 48 N.E.2d 857 (1943). Being impressed with the logic employed by the Ohio courts, we are unwilling to concede that Cooter mandates the conclusion argued by State Farm in this case.
Our analysis of cases from other jurisdictions, however, has convinced us that Mike Hallmark was not “using” his father’s automobile at the time of the collision in this case because it is uncontradicted that the journey undertaken by Miss Klein was at her request, for her own purposes, and was not in any sense beneficial to Mike Hallmark.
The Brown case, supra, supports our utilization of a “benefit test” in determining that the Hallmark automobile was not in this instance being used by Mike Hallmark, even though those decisions concluded that the subject vehicle was, at the time of the accident, being used by the bailee who permitted a third party to drive. As was stated by the Ohio Court of Appeals:
The word “use” is defined as the “Purpose served — a purpose, object or end for useful or advantageous nature.” (Oxford English Dictionary.)
This implies that the person receives a benefit from the employment of the factor involved. It is this benefit, purpose, or end which defines the use. [Emphasis added.] [49 N.E.2d at 419.]
*522 After concluding that the bailee-entrustor was “using” the car in Brown because of the benefit that accrued to her, the court observed:
The instant case is easily distinguishable from one where the person given permission to use the car transfers its entire use to another. Had the daughter in this case loaned the automobile to White, who took it and drove it unaccompanied by the daughter, and for his own separate purposes, an entirely different situation would have been presented. The difference is that the daughter never ceased to use the car for purposes within the permission given by the insured. [49 N.E.2d at 421.]
A case virtually on all-fours with the factual situation presented here by the instant case is Samuels v. American Automobile Insurance Co., 150 F.2d 221 (10th Cir. 1945). In that case, the named insured turned her vehicle over to her son, Richman, without any express limitations or restrictions concerning the use of the car. Rich-man lent the car to Kresge at a time when Kresge was allegedly intoxicated. Unaccompanied by and on no errand for Rich-man, Kresge had an accident. The Tenth Circuit Court of Appeals affirmed the district court’s decree adjudging that the insurer was not obligated to defend Richman, nor to pay any damages awarded against him in the actions that arose out of the accident. In addressing the question whether Richman, the bailee, was using the vehicle at the time of the collision, the appellate court stated:
There can be’ no question that Richman had permission from the named insured to use the insured automobile at the time of the accident. It is equally clear that at the time of the accident Kresge had neither the express nor implied permission of the named insured to use such automobile. Neither had the named insured delegated to Richman authority to permit Kresge to use the automobile. At the time of the accident, Kresge was using the automobile solely in his own behalf. He was not using it to serve any purpose, benefit, or advantage of Rich-man. It is true that the words “use” and “using” are broader than the words “operate” and “operating.” Webster’s New International Dictionary, 2d Ed., defines the word “use” as follows: “Act of employing • anything.” The New Century Dictionary defines it as follows: “To employ for some purpose, put into service, or make use of * * *; apply to one’s own purposes.” Where A operates B’s automobile, with B’s consent and for B’s purpose, benefit, or advantage, it may be said that B is using-the automobile, but, where A operates B’s automobile, with B’s consent, solely for A’s purposes, and in no sense for any purpose, benefit, or advantage of B, it cannot be said that B is using the automobile. [150 F.2d at 223.]
The facts, in the case at hand are even stronger than those in the Samuels case, for here the undisputed evidence is that Mike Hallmark was expressly prohibited by his parents from lending the Mustang to anyone. Indeed, his own use of the vehicle was restricted. Also, the evidence is uncontradicted that Karen Klein was on an errand of her own at the time of the accident, and that Mike Hallmark was not even aware of her actual destination. In view of the Brown and Samuels cases, we are unable to find that the foregoing facts provide any inference that the accident in question arose out of Mike Hallmark’s “use" of the Hallmark automobile on September 26, 1977. Accordingly, the judgment of the trial court denying coverage must be, and is, affirmed.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, MADDOX, FAULKNER, ALMON, SHORES and EMBRY, JJ., concur.
JONES, J., dissents.