**NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff,**

**v.**

**Amy SHANKLIN and Jacqueline Johnson, Defendants.**

No. Civ.A. 01–A–1023E.

United States District Court,
M.D. Alabama,
Eastern Division.

April 30, 2002.

Edgar M. Elliott, IV, Michael Anthony Vercher, Christian & Small, LLP, Birmingham, AL, for Plaintiff.

Roger C. Guilian, Killion & Rowan, PC, W. Craig Hamilton, Hand Arendall, L.L.C., George M. Walker, Lisa Darnley Cooper, Hand Arendall, L.L.C., Mobile, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

## I. *INTRODUCTION*

This cause is before the court on a Motion for Summary Judgment (Doc. # 24) submitted by Nationwide Mutual Insurance Company ("Nationwide") and on cross Motions for Summary Judgment (Doc. # 22) (Doc # 31) submitted by Defendants' Jacqueline Johnson ("Johnson") and Amy Shanklin ("Shanklin"). Nation-

wide has also filed a Motion to Strike (Doc # 35).

Nationwide filed this Declaratory Judgment action in this court August 23, 2001. In the Complaint, Nationwide asks this court to determine all coverage issues, specifically the duties it owes Shanklin with regard to the car insurance policy issued to Frank and Sherre Dees.[1] Defendants contend that Shanklin is entitled to full coverage under the Dees' policy. This court has jurisdiction on the basis of diversity of citizenship.

For reasons to be discussed, the Plaintiff's Motion for Summary Judgment is due to be GRANTED. The Defendants' motions are due to be DENIED.[2]

## II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this

---

1. Mrs. Dees is referred to as "Sheree" and "Sherre" throughout the parties' briefs and documents. The court will use Sherre in its opinion because it is listed this way in the policy declarations.

2. The Plaintiff's Request for Oral Argument will be denied.

burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court, that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In resolving the Defendants' and Plaintiff's Motions for Summary Judgment, the court will construe the facts in the light most favorable to the nonmovant when the parties' factual statements conflict or inferences are required. *Barnes v. Southwest Forest Industries,* 814 F.2d 607, 609 (11th Cir.1987).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### III. *FACTS*

This action is based on an automobile insurance policy issued by Nationwide to Frank M. and Sherre Dees of Mobile, Alabama. The vehicle listed in the policy is a 1999 Chevrolet Tahoe. Jenny Dees ("Jenny"), the daughter of Frank and Sherre ("the Dees"), was the primary driver of the vehicle.

Jenny attended college in Auburn, Alabama and used the vehicle primarily in this area. On the evening of February 27, 2001, the vehicle collided with a bridge wall on Shelton Mill Road in Auburn. Jenny was neither driving nor an occupant of the vehicle. The driver of the vehicle was Amy Shanklin. Jacqueline Johnson and Joseph Smith were passengers in the vehicle when the accident occurred.

Jenny Dees, Jason Potts, Chad Walton, Chad Scott, Matt Williams, and Lindsay Durham along with Shanklin, Johnson, and Smith had traveled from Auburn to a party at Chad Walton's property in rural Lee County. Jenny Dees took Shanklin, Johnson, Smith, and Matt Williams to the party in the Chevy Tahoe. The remaining partygoers rode in Chad Scott's truck. En route to the party, the students purchased copious amounts of alcohol. After socializing for several hours, at some point shortly after midnight, Johnson and Smith decided to return to Auburn. Shanklin agreed to drive them home in the Tahoe in which they had arrived with Jenny Dees. At this point, Shanklin somehow acquired the keys to the vehicle and left with Johnson and Smith.[3] Shortly thereafter, the Tahoe was involved in the one car wreck into the bridge wall on Shelton Mill Road. Johnson was severely injured in the accident.

Following this accident, Johnson filed a lawsuit against Shanklin and others in the Circuit Court of Mobile County. In the lawsuit, Johnson alleges that Shanklin was intoxicated at the time of the accident and

---

**3.** The question of whether Jenny gave the keys to Shanklin is a purely factual issue which the court cannot determine. The court in no way intends to espouse either view of this factual disagreement. This, however, is not a material fact in determining whether summary judgment is due to be granted, as will be discussed.

that her actions were a contributing cause to the alleged injuries to Johnson.

Defendant Amy Shanklin asserts that Jenny gave her permission to use the vehicle. Shanklin asserts that because of the alleged permission, she was covered under the Nationwide policy at the time of the accident.

## IV. *DISCUSSION*

Three motions for summary judgment are before the court. In addition to the Plaintiff's motion, each of the Defendants has filed a summary judgment motion. The court will treat the Defendants' motions as one motion because Defendant Shanklin adopts the legal arguments of Defendant Johnson and only offers additional factual support.[4] In each of the motions, the parties ask the court to grant summary judgment as to 1) whether Jenny Dees had the authority to transfer Nationwide's insurance coverage to Amy Shanklin on the night of the accident, and 2) whether Jenny Dees did in fact give Amy Shanklin permission to drive the insured vehicle. Since the question of actual permission is premised on the conclusion that Jenny had the authority to transfer coverage to Amy Shanklin, the court must first decide the scope of Jenny Dees' authority. In deciding these cross motions, the court will view the facts in the light most favorable to the nonmovant.

Frank and Sherre Dees are listed as the policyholders for the Nationwide insurance on the Chevy Tahoe. Jenny is not listed as a policyholder on the policy, however, she is a permittee and is recognized as the primary driver of the vehicle. *See* Policy Declarations, page 2. To determine the scope of the insurance coverage, the court must first look at the language of the

policy itself. The omnibus clause of the insurance policy states in relevant part,

> To pay all sums which those entitled to protection become legally obligated to pay as damages arising out of the ownership, maintenance, or use ... of the described automobile.... Those entitled to protection under these Coverages ... are (a) the Policyholder; (b) any resident of the same household; and (c) any person or organization legally responsible for the use of the described automobile provided the actual operation ... is with the permission, express or implied, of the Policyholder or his spouse ... and is within the scope of such permission.

The key language, cited by both the Plaintiff and Defendants is "with the permission, express or implied, of the Policyholder or his spouse." Since Frank and Sherre Dees are the policyholders and they were in Mobile at the time of the accident in Auburn, it is readily apparent that there was no express permission from them to Shanklin in this case, and the Defendants do not contend that there was. Thus, the question is whether Amy Shanklin can receive implied permission from the policyholders through the actions of the permittee, Jenny Dees.

The parties disagree as to Alabama law on the subject. Nationwide argues that under Alabama law, Shanklin must have received either express or implied permission from Frank or Sherre Dees and that Jenny Dees alone is unable to confer coverage. Nationwide contends that under Alabama caselaw, Shanklin cannot satisfy either of these standards. Defendants, on the other hand, argue that Shanklin can receive implied permission from the actions of Jenny and also that Alabama has

---

**4.** Any reference to Defendants' motion is to Johnson's *Motion for Summary Judgment* unless otherwise noted.

adopted a "benefit test" as an exception to any restrictions on the use of the vehicle. *See* Johnson's Motion for Summary Judgment, page 23. This "test" could grant coverage to a second permittee even where the first permittee was expressly restricted by the policyholder from allowing others to drive. Such exceptions have been adopted in other jurisdictions. *See generally Nationwide Mut. Ins. Co. v. Dunning,* 252 F.3d 712, 717 (5th Cir.2001) (citing to Mississippi law); *Hartford Ins. Co. of Midwest v. Nationwide Mut. Ins. Co.,* 523 S.E.2d 71, 72 (Ga.App.1999) (explaining second permittee doctrine under Georgia law). Defendants, citing *Dutton v. State Farm Mut. Auto. Ins. Co.,* 383 So.2d 519 (Ala.1980), contend that where a second permittee uses an automobile in the interest of the original permittee then coverage is determined by the use of the automobile and not by the actions of the named insureds. Defendants assert this grants Shanklin coverage in this case.

Many of the cases cited in Nationwide's brief are inapposite here because they are cases where the insurance policy in question only allows for "express" permission to be given by the policyholder. The Dees' policy, on the other hand, allows for "express or implied" permission by the policyholder. Alabama makes a clear distinction between these types of policies as evidenced by the cases cited by Nationwide. *See e.g. Alabama Farm Bureau Mut. Cas. Ins. Co. v. Mattison,* 286 Ala. 541, 243 So.2d 490, 492 (1971). In addition to this, however, Nationwide does cite cases which enunciate the standard for implied permission. *See Alabama Farm Bureau Mut. Cas. Ins. Co. v. Robinson,* 269 Ala. 346, 113 So.2d 140, 146 (1959); *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Government Employees Ins. Co.,* 240 So.2d 664, 668 (Ala.1970). On this basis the court will consider Plaintiff's Motion for Summary Judgment.

In order to prove implied permission under Alabama law, "there must be a course of conduct engaged in by the parties over a period of time prior to the use in question or else there must be particular circumstances to justify an inference of implied permission." *Sleight v. State Farm Mut. Auto. Ins. Co.,* 516 So.2d 616, 618 (Ala.1987). Implied permission is inferred from the facts and circumstances of a given case, and can be proven by circumstantial evidence, however, "the evidence must tend to show a course of conduct or practice on the part of the person whose permission must be had, with knowledge of the existing facts and circumstances, that supports a reasonable inference of permissive use of the automobile." *Id.* Alabama courts have also recognized with approval that a mutual acquiescence between the Dees and Shanklin or a lack of objection by the Dees may be used to show a course of conduct. *See Government Employees,* 240 So.2d at 668 (quoting from *Hinton v. Indemnity Ins. Co.,* 175 Va. 205, 8 S.E.2d 279, 283 (1940)).

Nationwide contends that there was no course of conduct between Shanklin and the Dees. Nationwide also contends that there is no evidence in this case that the Dees acquiesced to Shanklin driving the vehicle and in fact affirmatively warned Jenny to not allow others to drive the vehicle. Sherre and Jenny Dees both provided testimony that Sherre Dees had expressly forbidden Jenny Dees from allowing others to drive the car. *See e.g.* Deposition of Jenny Shuran Dees, Pl.Mot. for Summary Judgment, Tab C, page 100, line 4; Deposition of Sherre Louise Dees, Pl.Mot. for Summary Judgment, Tab L, page 13, lines 22–23. This in itself is not dispositive evidence, however, Nationwide is correct that there is no evidence in the record to indicate that Frank or Sherre Dees was ever aware that Jenny Dees

allowed others to drive the vehicle.[5] Shanklin herself indicates that she has no knowledge of any instance where the Dees permitted someone other than Jenny to drive the vehicle. *See* Deposition of Amy Shanklin, Pl.Mot. for Summary Judgment, Tab G, page 45, line 12. There are numerous articles of evidence indicating that Jenny Dees did in fact let others use the vehicle, but none of those instances can reasonably be linked to Frank and Sherre Dees.

In the response to Nationwide's motion, Defendants cite several cases dealing with implied permission in addition to those cases which are cited as the basis of Defendants' summary judgment motion. Defendants' cases which, on the whole, are more factually relevant than Nationwide's, still indicate that there must be some basis to conclude that the *policyholder* had either given past permission or acquiesced to others driving the vehicle. In *Royal Indem. Co. v. Pearson*, 287 Ala. 1, 246 So.2d 652 (1971), a bank allowed a prospective purchaser to test out a truck prior to purchase. *Id.* at 655–656. The prospective purchaser then in turn allowed an employee to drive the truck. *Id.* The employee subsequently was involved in an accident. The court found that the employee had implied permission from the bank because the bank had placed no restrictions on the prospective purchaser. *Id.* at 658, 659. The bank was in fact aware that the purchaser did not drive the truck, but that his employees did. *Id.* at 656. Since there was clear evidence that the bank placed no restrictions on the purchaser and the bank was aware that a second permittee would use the vehicle, this case is distinguishable from the present case. The other cases in this context

cited by the Defendants are no different. *See Harrison v. Densmore*, 279 Ala. 190, 183 So.2d 787 (1966) (since there were no restrictions by the insured, the permittee had implied permission to let others use the car, especially for the permittee's benefit); *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Billups*, 366 So.2d 1109 (Ala. 1979) (insured placed no restrictions on driver and question of allowing others to use the vehicle never came up). In each, the permittee had unfettered permission to use the vehicle with no restrictions placed on them by the insured. The court found implied permission based only on that fact.

■ These cases are not on point with the present situation in which there is no evidence that the insureds were aware that the permittee was letting others use the vehicle, and the evidence shows that they had in fact expressly restricted that authority. This leads the Defendants to argue that in cases where the driver was restricted from lending out the vehicle, Alabama applies a "benefit test" to determine whether the driver was covered under the insurance policy. Defendants submit the benefit test as both a defense to Nationwide's motion, and as the basis for their summary judgment motion.

■ Alabama has alluded to a "benefit test", but has never expressly adopted it. *See Dutton*, 383 So.2d at 521–522. For the purposes of analysis, the court will assume, without holding, that the test could apply under Alabama law, and will turn to the parties' arguments as to the applicability of such a test. The test in reality is an exception to the rule that insurance coverage cannot be granted to a second permittee where the first permittee had express restrictions on the use of the vehicle. The

---

5. Sherre Dees explains one incident in which she asked a boy to drive the vehicle around the block to facilitate Jenny getting to the doctor's office after she had been injured in a

previous car wreck, but the court does not consider this incident to be relevant to the present question. *See* Deposition of Sherre Louise Dees, Tab L, page 18, lines 6–12.

court is aware of various applications of this exception and other exceptions in other jurisdictions, however the only clear enunciation of the rule in Alabama that Defendants offer is a Magistrate Judge's recommendation in an Alabama federal district court. *See State Farm Mut. Ins. Co. v. Lee,* No. 93–0797, 1994 U.S.Dist. LEXIS 6557 ( S.D.Ala. April 25, 1994) (citing to 46 C.J.S. Insurance § 1052 at 433–34). This is not an Alabama Supreme Court case, however, the court will consider the factors espoused in *Lee* since the Alabama Supreme Court in *Dutton* arguably indicated that Alabama applies the exception. In *Lee,* the court explained three instances that might allow a second permittee coverage where the first permittee was expressly prohibited from allowing others to drive the vehicle:

> (1) where the actions of the second permittee serves some purpose, benefit or advantage of the named insured; (2) where the first permittee violates the restrictions to the knowledge of the named insured who makes no significant protest; and (3) where despite the express restriction, the facts present a situation where it can be reasonably implied that the named insured nevertheless granted permission to the second permittee, such as an emergency situation where the first permittee requests that the second permittee operate the vehicle. *Lee,* 1994 U.S.Dist. LEXIS 6557 at * 14, citing 46 C.J.S. Insurance § 1052, at 433–34.

Alabama courts have never discussed the third exception, and while not expressly named, the second exception is essentially

the same rule that is discussed in the Alabama cases involving implied permission. Neither of these exceptions would apply to this case. Thus, the Defendants argue that the actions of Shanklin served some "purpose, benefit, or advantage" for Jenny Dees and thus Shanklin is entitled to coverage.[6]

■ As the "purpose, benefit, or advantage" to Jenny,[7] Defendants argue that because Jenny drove Shanklin, Smith, and Johnson to the party, she incurred some duty to bring them home. Thus, Shanklin, by taking Johnson and Smith back to Auburn, was awarding some benefit to Jenny. The court cannot agree. Assuming the facts in the most favorable light to the Defendants in this situation, the court still cannot find that this trip back to Auburn could have incurred any benefit to Jenny. Putting the question of how Shanklin got the keys aside, when Shanklin left with Johnson and Smith, Jenny was left out in the country with no vehicle and no way to get home. She was also left with one of the people that she took to the party.[8] This left six people at the party with one vehicle, Chad Scott's truck. Although Jenny was certainly not left in a precarious situation, it is unreasonable to assume that Shanklin's taking of the vehicle conferred some benefit on Jenny. Furthermore, the court does not find any Alabama caselaw that recognizes any duty requiring Jenny to take the same people home from a party that she brought there. This, the court finds, precludes coverage even if Alabama has adopted the "benefit test".

---

6. In *Dutton,* the Alabama Supreme Court relies on a Tenth Circuit Case, *Samuels v. American Automobile Ins. Co.,* 150 F.2d 221 (10th Cir.1945) which uses the identical language of "purpose, benefit, or advantage". *Dutton,* 383 So.2d at 522.

7. Defendants do not argue benefit to the Dees and Nationwide does not argue that the "benefits test" should be directed only to the Dees. Therefore, the court will consider only whether the test would be met if directed to Jenny.

8. Matt Williams remained with Jenny at the party.

In either a strict implied permission analysis or a "benefit test" analysis, Shanklin is not provided coverage under Alabama law. There is no evidence to indicate any course of conduct or practice between Shanklin and the Dees. The fact that Jenny Dees may have allowed other people to use the car does not establish coverage under Alabama law unless Shanklin can point to some connection to the named policyholders. There is no evidence that the Dees knew or could have known that Jenny was letting others use the vehicle.[9] In addition to this, there are no facts before the court that indicate any possible benefit that Jenny incurred because of Shanklin's use of the vehicle. Shanklin's use was unquestionably "for her own purposes" or for the benefit of others, and not beneficial to Jenny. *Dutton,* 383 So.2d at 522. Based on these conclusions, the court determines that whether there is sufficient evidence that Jenny Dees allowed Shanklin to drive the car is not relevant, because, even if she did, that would not extend coverage under the policy to Shanklin.

## V. *CONCLUSION*

For the reasons discussed, the court finds that there is no genuine issue of material fact and that the Plaintiff's Motion for Summary Judgment is due to be GRANTED; Defendants Johnson and Shanklin's Motions for Summary Judgment are due to be DENIED. Plaintiff's Motion to Strike is due to be DENIED as moot, as consideration of the evidence in question would not alter the outcome. The court will enter an order entering judgment in favor of Nationwide.

9.  Defendants further argue that children this age have a propensity for letting others use their cars. While possibly true, this cannot be a basis for liability as it would open the door

## *ORDER AND FINAL JUDGMENT*

For the reasons set forth in the Memorandum Opinion entered on this day, it is hereby ORDERED as follows:

1.  The Motions for Summary Judgment filed by the Defendants, Amy Shanklin and Jacqueline Johnson, are DENIED.

2.  The Motion for Summary Judgment filed by the Plaintiff, Nationwide Mutual Insurance Company, is GRANTED.

3.  Judgment is entered in favor of the Plaintiff, Nationwide Mutual Insurance Company, and against the Defendants, Amy Shanklin and Jacqueline Johnson, and it is hereby declared that the policy of automobile insurance issued by Nationwide Mutual Insurance Company to Sherre and Frank M. Dees, Policy No. 77–01–K–064580, provides no coverage for Amy Shanklin in regard to the automobile accident alleged in the case of *Jacqueline Johnson v. Amy Shanklin; Winn–Dixie Montgomery; Tiger Package, Inc.,* CV–2001–1396, pending in the Circuit Court of Mobile County, Alabama, and Nationwide Mutual Insurance Company is under no duty to defend Amy Shanklin, or to indemnify Amy Shanklin against liability, in that suit.

4.  The Plaintiff's Request for Oral Argument, Motion to Strike and Motion to Strike Defendants' Jury Demand are DENIED as moot.

5.  Costs are taxed against the Defendants.

for virtually unlimited liability to Nationwide. Nationwide is certainly not precluded from limiting the scope of its policies.