SHORES, Justice.
This is an appeal from an order discharging Julia L. Asam’s $250,000 garnishment claim against American Liberty Insurance Company. Asam had earlier obtained a default judgment against American Liberty’s insured, Willard O. Stanley, d/b/a Poodle Palace, in the amount of $250,000. Asam’s complaint against Stanley alleged the following:
“COUNT ONE
“1. On or about the 7th day of August, 1976, Plaintiff and Defendant entered. into an agreement by which Defendant promised to feed, water, care for, and transplant two hundred fifty (250) white mice, which were being used in the carrying on and operating a research cancer project.
“2. Defendant breached the agreement by failing to feed, water, care for, and transplant said mice according to his agreement with the Plaintiff causing the loss of said mice to the damage of the Plaintiff.
“Wherefore Plaintiff demands judgment against Defendant in the sum of Two Hundred Fifty Thousand and No/100 ($250,000.00) Dollars, interest and costs.
“COUNT TWO
“1. Sometime between the 7th day of August, 1976, and the 18th day of October, 1976, Defendant converted to his own use two hundred fifty (250) white mice being used in cancer research project of the value of Two Hundred Fifty Thousand and No/100 ($250,000.00), the property of Plaintiff.
“Wherefore Plaintiff demands judgment against Defendant in the sum of Two Hundred Fifty Thousand and No/100 ($250,000.00) Dollars, interest and costs.”
*1058 After obtaining her default judgment, Asam then filed her garnishment claim against American Liberty. American Liberty answered that it was not liable to Stanley under the policy of insurance and was not responsible to pay any sums for or on behalf of Stanley. The court agreed and discharged American Liberty. Plaintiff appeals. We affirm.
The two issues pertinent to this appeal are:
(1) Were the actions of Stanley covered by the policy with American Liberty so as to make American Liberty subject to Asam’s writ of garnishment?
And, if so, (2) did Stanley fail to perform the notice condition of the policy, thereby breaching the condition precedent to the company’s liability?
It is not necessary to address the latter issue because we hold that the claim by Asam against Stanley was not covered under the terms of the insurance policy.
In her brief, Asam contends that three types of coverage in the insurance policy are applicable to her loss. These are: (1) the comprehensive general liability policy; (2) the general policy floater covering animals in the care, custody, and control of Mr. Stanley; and (3) the commercial umbrella insurance liability policy.
The general liability policy, in pertinent part, provides coverage as follows:
“The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury or (B) property damage to which this insurance applies, caused by an occurrence. . . . ”
An “occurrence” is defined in the policy as an “accident, including continuous or repeated exposure to conditions, which results • • • in . . . property damage neither expected nor intended from the standpoint of the insured.”
The general liability policy also contains certain exclusions pertinent to this appeal:
“This insurance does not apply:
“(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured’s products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

“(k) to property damage to

“(3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control....

“(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
“(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or
“(2) the failure of the named insured’s products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured. . . . ” (Emphasis added.)
In Employers Insurance Company of Alabama v. Jeff Gin Company, 378 So.2d 693, 695 (Ala.1979), this Court held that:
“It is a general rule of construction that exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured. Further, such exceptions must be construed most strongly against the company drafting and issuing the policy.”
Additionally, the Court held that:
“It is a fundamental rule of insurance law that courts construe insurance contracts in a manner to give effect to the intent of the parties; however, any ambiguities in the policy are to be resolved in favor of the insured. Billups v. Alabama Farm Bureau Mutual Casualty Insurance Company, 352 So.2d 1097 (Ala.1977). This Court has frequently held that provisions of insurance policies must be construed in light of the interpretation that *1059 ordinary men would place on the language used. Universal Underwriters Insurance Company v. Marriott Homes, Inc., 286 Ala. 231, 238 So.2d 730 (1970).”
378 So.2d at 695.
Asam argues that exclusion (k) is ambiguous when read with exclusions (a) and (m). She asserts that, while exclusion (k) provides an exclusion for property damage to property in the care, custody, or control of the insured, the fact that exclusions (a) and (m) provide exceptions to exclusions for a warranty of fitness and quality and for property that has been physically injured or destroyed should cause the clauses to be interpreted to mean that damage to physical property (e.g., a tin can) would not be covered, but coverage would be provided for workmanship and/or destruction of or injury to animals. She concludes that this reasoning is valid because the obvious intent of the parties would be to provide liability insurance to Stanley’s business and both parties knew at the outset that his principal occupation concerns the care and custody of animals.
After careful review of the insurance policy, we find that the exclusions provided under the general liability policy are not ambiguous and can be logically read independently of the others.
For example, exclusion (a) provides an exception for situations where Stanley could be liable after selling items used in conjunction with his business, such as equipment, grooming instruments, medication, and the like. Also, exclusion (m) could apply to situations where Stanley undertook to repair an item and failed to do so. In these contexts, exclusions (a) and (m) do not create ambiguity when read along with (k).
Therefore, we hold that the exclusion in the policy for liability assumed under contract is valid and avoids coverage under the general liability policy.
Asam alternatively claims that the commercial umbrella excess liability policy should apply because it specifically covers liability assumed under contract and has no exclusion that would prohibit coverage.
The policy reads in pertinent part:
“The company will indemnify the insured for ultimate net loss in excess of the retained limit hereinafter stated which the insured may sustain by reason of liability imposed upon the insured by law, or assumed under any contract or agreement by the named insured or by any officer, director, stockholder or employee of the named insured while acting within the scope of his duties as such, for damages because of (a) Personal Injury, (b) Property Damage . . . caused by or arising out of an occurrence happening anywhere in the world during the policy period.” (Emphasis added.)
The pertinent exclusion to this policy states:
“This policy does not apply:
“To the insured’s liability for bodily injury or property damage, direct or consequential, and expenses on account of loss arising out of real and personal property held by or in the care, custody or control of the insured in any capacity as trustee, guardian, executor, administrator, custodian, escrow tenant or otherwise.” (Emphasis added.)
Asam reasons that the wording of the umbrella policy indicates that the policy’s purpose was not to just provide excess coverage, but rather to expand the coverage to protect against gaps in the underlying policies and would thereby include the present situation. In support, Asam cites the New Jersey Supreme Court case of Bryan Construction Company v. Employers Surplus Lines Insurance Company, 60 N.J. 375, 290 A.2d 138 (1972).
While we find sound reasoning in Asam’s argument that the umbrella policy does more than just provide excess coverage, we are nevertheless constrained to hold that Asam’s situation with Stanley falls directly within the cited exclusion to the policy, thereby prohibiting coverage.
We also hold that the general property floater, which insures “animals on in *1060 sured premises while in his care, custody and control with a $500 maximum per animal subject to a $5,000 policy limit” against certain specified perils, does not provide coverage here simply because Asam failed to prove that any of the specified perils caused the loss of the mice.
The judgment is affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES and ADAMS, JJ., concur.