MURDOCK, Justice
(dissenting).
Because I believe that our statutory scheme requires automobile liability insurance policies to cover persons who have the permission of the insured, whether express or implied, to use the insured vehicle, I respectfully dissent.
The main opinion frames the issue as a pitting of the principle of freedom of contract against a vague notion of public policy and, given those choices, sides with the principle of freedom of contract. But the freedom of contract is not unlimited. “Statutorily required provisions of an insurance contract are read into a contract even if the policy itself does not contain the required provisions.” Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 955 (Ala. 2004). Indeed, the main opinion acknowledges this fundamental tenet, citing Hodurski and stating that “[w]hen a contract of insurance is in conflict with, or repugnant to, statutory provisions that ... form a part of[ ] the contract, the contract must yield to the statute.” 227 So.3d at 487. Here the applicable statutes present such a conflict; therefore, a proper application of the principle of freedom of con *493 tract must accommodate the legislatively imposed requirements.
The liability policy at issue in this case was issued pursuant to the Mandatory Liability Insurance Act, § '32-7A-1 et seq., Ala. Code 1975 (“the MLIA”), which was enacted in 2000. Section 32-7A-4 of the MLIA states:
“(a) No person shall operate, register, or maintain registration of, and no owner shall permit another person to operate, register, or maintain registration of, a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy, a commercial automobile liability insurance-policy, motor vehicle liability bond, or deposit of cash.
“(b)(1) The liability insurance policy or commercial automobile liability insurance policy shall be issued in amounts no less than the minimum amounts set for bodily injury or death and for destruction of property under Section 32-7-6(c).
“(2) The motor vehicle liability bond shall be in the amount of not less than the minimum amounts of liability coverage for bodily injury or death and for destruction of property under subsection (c) of Section 32-7-6. The bond shall be conditioned on the payment of the amount of any judgment rendered against the principal in the bond or any person responsible for the operation of the principal’s motor vehicle with his or her express or implied consent, arising from injury, death, or damage sustained through the use, operation, maintenance, or control of the motor vehicle within the State of Alabama.
“(3) The deposit of cash with the State Treasurer shall be in the amount of not less than the minimum amounts set for bodily injury or death and for destruction of property under subsection (c) of Section 32-7-6.”
(Emphasis added.) The MLIA defines “deposit of cash” as
“[fjunds deposited with and 'held by the State Treasurer as security for payment by the depositor, or by any person responsible for the depositor’s motor vehicle with his or her express or implied consent, of all judgments rendered against the depositor or other authorized operator of. the depositor’s motor vehicle arising from injury, death, or damage sustained through use, operation, maintenance, or control of the motor vehicle within the State of Alabama.”
§ 32-7A-2(7), Ala. Code 1975 (emphasis added).
The main opinion focuses on the descriptions of the three forms of security permitted by the statute and, specifically, a textual difference in the manner in which the legislature describes each of them in subsection (b) of § 32-7A-4. I think it important, however, that we begin with subsection (a) of the statute. It is there that the legislature tells us “who” must have one of these three types of security. And that, after all, is the issue before us.
A. Section 32-7A-4(a) Describes “Who” Must Be Covered
Subsection (a) of § 32-7A-4 clearly states this universal restriction: “[N]o owner shall permit another person.” This general prohibitory language plainly operates to restrict against any “permit[ted]” use. “Any” includes both express and implied. I know no other way to read this language.
This same sentence then proceeds to lift the restriction against any permitted use of vehicles if any one of. the three types of security listed at the end of the subsection (liability insurance, liability bonds, or a cash deposit) is in place. Subsection (a) *494 does not distinguish between these types of security. It does not align some of them with those who would operate the vehicle with express permission and some with those who would operate the vehicle with implied permission. Anyone the owner would permit to operate the vehicle can do so with any of the three types of security. Clearly therefore, the text of §. 32-7A-4(a) reveals the legislature’s' intent that the three types of security be interchangeable and that the motoring public is equally protected by any one of them.
Moreover, this plain reading of the text is further buttressed by common sense and a consideration of the policy basis for the MLIA'. The purpose of the MLIA is to protect members of the public injured on our highways as a result of the operation of covered motor vehicles. Given that the method chosen to fulfill that purpose is to require proof of pre-accident financial "responsibility for owners of motor vehicles, and given that the vast majority of owners fulfill this requirement through liability insurance policies, I see no reason in logic or sound policy that the legislature would require or contemplate that liability bonds and cash, deposits must provide protection for' more people than would liability insurance policies.
B. Section 32-7A-4(b) (and Pertinent Provisions of the Alabama Motor Vehicle Safety , Responsibility Act, § 32-7-1 et seq., Ala. Code 1975 (“the MVSRA”)) Prescribe “What” the Coverage Must Be
Having considered what § 32-7A-4(a) clearly states as to “who” must be covered by one of the three forms of financial security before a person may be permitted to use a vehicle, I turn to the corollary matter'of what § 32-7A-4(b) states as to “what” must be included in that coverage. As noted,- the main' opinion focuses on what it considers to be a critical difference in the descriptions of the three forms of security as set out in subsection (b). I submit that the distinction seen by the main opinion inherently conflicts with, and cannot logically be maintained in light of, the language of subsection (a) as to “who” must be covered. Further still, upon closer examination of all relevant statutory provisions, I find the distinction drawn by the main opinion as to “what” must be provided under each form of security to be unpersuasive in its own right, i.e., without regard to the plain text of § 32-7A-4(a) as to “who” must be covered. Indeed, I find in the applicable statutory provisions an additional textual basis that .is more than sufficient to support the interpretation that the legislature’s intent was that liability insurance must include coverage for both express and implied users.
It is true that the language of § 32-7A-4(b)(2) explicitly requires that liability bonds provide coverage for users operating a vehicle both with express and implied permission, whereas § 32-7A-4(b)(l) contains no similar explicit statement regarding liability insurance. .But neither does subsection (b)(1) explicitly limit liability policies to users with express permission. It simply contains no language whatsoever referring to either express or implied users. And we need not look far to see that such an omission from § 32-7A-4(b) is not dispositive,, because the legislature also saw no need to include any such explicit reference, to both express and implied users in § 32-7A-4(b) as to “deposits of cash.” Yet, despite this omission, we know from another statutory provision that this is what the legislature intended. See § 32-7A-2(7) (defining a “deposit of cash” as a form of security for both express and implied users).
What § 32-7A-4(b)(l) does contain is a specific requirement that an “automobile liability insurance policy be issued in *495 amounts no less than the minimum amounts set for bodily injury or death and for destruction of property under Section 32-7-6(c)[, Ala. Code 1975].” The “minimum amounts ... under Section 32-7-6(c)” cannot be understood 'without reference to who is entitled to such limits. To apply the limits of coverage “under § 32-7-6(c)” without applying them to the same parties covered by that section is to not actually apply the limits of coverage of that section. As explained in Part “C,” below, the limits of coverage set out in § 32—7—6(c) are limits for users of the vehicle with both express and implied permission.
C. Reading the MLIA and the MVSRA in Pari Materia
I submit that the textual analyses stated in Parts “A” and “B,” above, are by themselves sufficient bases for concluding that the statutes at issue intend no liability insurance distinction between express and implied users of another’s automobile on public roadways. And, I submit, this conclusion is buttressed by the fact that the alternative conclusion simply cannot be squared with logic and the sound policy underlying the statutes. And, although this latter point has already been made in the discussions above, a deeper appreciation of it comes from a closer examination of the interdependent relationship between the MLIA and the MVSRA.
The MVSRA, which was enacted in 1951, set up a system whereby drivers had certain reporting and financial responsibilities after an accident. See Higgins v. Nationwide Mut. Ins. Co., 50 Ala.App. 691, 696, 282 So.2d 295, 300 (Civ. App.), aff'd, 291 Ala. 462, 282 So.2d 301 (1973). Under § 32-7-6, drivers were required to post security to cover losses or to pay for those losses within 20 days. If they failed to live up to those financial responsibilities, drivers faced suspension of their driving privileges. One way a driver could avoid the financial responsibilities and suspensions provided -in § 32-7-6(b) was “if the owner had in effect at the-time of the accident an automobile liability policy with respect to the motor vehicle involved in the accident.” § 32-7-6(c)(l),- Ala. Code 1975. Section 32-7-7, Ala. Code 1975, lists other ways to avoid the requirements of § 32-7-6:
' “The requirements as to security and suspension in Section 32-7-6 shall not apply to any 'of the following persons:
[[Image here]]
“(3) The owner of a motor vehicle if at the time of the accident the vehicle was being operated without the permission of the owner, express or implied, or was parked by a person who had been operating the motor vehicle without the permission.”
§ 32-7-7(3), Ala. Code 1975 (emphasis added). In other words, under the scheme provided in the MVSRA, either having a liability insurance policy in place before the accident or the operation of the vehicle without the express or implied permission of the owner exempted the owner from having to post security after the accident or face suspension of driving privileges.
The MVSRA’s equation for exemption purposes of liability insurance coverage and the absence of express or implied permission to use a vehicle is important because the MLIA incorporates provisions of the MVSRA in ways that directly impact how the MLIA should be interpreted with regard to the issue in this case. As already discussed, the MLIA incorporates the.minimum limits of liability coverage in the MVSRA. In addition to that critical fact, the. MVSRA defines a “motor vehicle liability policy” in § 32-7-22(a) as “an owner’s or an operator’s policy of liability insurance, certified as provided in Section 32-7-20 or Section 32-7-21 as proof of financial responsibility, and issued ... by an insur- *496 anee carrier duly authorized to transact business in this state.” In what is surely not a coincidence, the MLIA almost identically defines a “liability insurance policy” as “[a]n owner’s or an operator’s personal automobile, liability insurance policy, issued by an insurance carrier duly authorized to transact business in this state.” § 32-7A-2(11), Ala. Code 1975. Section 32-7-22(b) then proceeds to provide that an “owner’s policy of liability insurance ... [s]hall insure the person named in the policy and any other person, as insured, using any motor vehicle or motor vehicles designated in the policy with the express or implied permission of the named insured.” § 32-7-22(b)(2), Ala. Code 1975 (emphasis added). When the MLIA was adopted in 2000, there was only one type of insurance policy required to be issued under the MVSRA, 1.e., the policy issued pursuant to § 32-7-22.
Section 32-7A-25, Ala. Code 1975, expressly provides that “[t]his chapter is supplemental to other laws relative to motor vehicles and a liability insurance policy, commercial automobile liability insurance policy, liability insurance bond, or deposit of cash, and insofar as possible shall be construed in pari materia with such laws.” (Emphasis added.) The legislature could not have been clearer. The MLIA “shall be construed in pari materia” with the MVSRA. This directive, combined with the nearly identical definitions of “motor vehicle liability policy” in the MVSRA and “liability insurance policy” in the MLIA— not to mention the cross-references between the two as to policy limits—dictate that the requirement in the MVSRA that a motor-vehicle liability policy include coverage for persons who use a vehicle with the owner’s permission,' express or implied, is applicable to the MLIA.[2]
D. Precedent
Finally, and. in addition to all of the foregoing, this Court already has construed the MLIA in a manner that is consistent with the construction explained above. In Billups v. Alabama Farm Bureau Mutual Casualty Insurance Co., 352 So.2d 1097 (Ala. 1977), several individuals sought underinsured-motorist benefits and medical benefits from an Alabama Farm Bureau Mutual Casualty Insurance Company (“AFB”) policy. The policy limited underin-sured-motorist coverage to “insured” individuals. 352 So.2d at 1100. The policy defined the term “insured automobile” as including an automobile used by the “named insured” and his or her spouse or those using the automobile with the named insured’s express, but not implied, permission. The question before the Court was whether the MVSRA reqúired the under-insured-motorist coverage in the AFB policy to extend to those who used the named *497 insured’s automobile with the named insured’s implied permission.
The Billups Court began its analysis by observing that “[t]his court has held that the scope of uninsured motorist coverage must be coextensive with liability coverage.” 352 So.2d at 1100. The Court then quoted the mandatory provisions of the MVSRA, then located at Title 36, § 74(62), Alabama Code 1940 (Recomp. 1958), which stated that an automobile insurance policy “shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured.” Id. (emphasis omitted; emphasis added). As a result of this language, this Court concluded that “§ 74(62) is unambiguous in mandating the extension of liability insurance coverage to persons using an insured vehicle with the express or implied permission of the named insured.” 352 So.2d at 1100 (emphasis omitted; emphasis added). The Court then held that because underinsured-motorist coverage must be “coextensive” with liability coverage, AFB could not legally limit coverage (underinsured or liability coverage) to only those using the automobile with express permission. Id.
In short, the Billups Court recognized that all mandatory automobile liability insurance policies under the MVSRA are required to provide coverage to those who use an insured vehicle with the insured’s implied permission.[3] The legislature’s passage of the MLIA served only to expand the requirement of mandatory automobile liability insurance in this State from one of post-accident coverage only, to one of either post- or pre-accident coverage; it did not curtail in any way the type of coverage that must be provided in such mandatory liability insurance policies. Therefore, the holding in Billups is relevant precedent for our decision in this case.
E. Conclusion
Section 32-7A-4(a) unambiguously provides that no one may be permitted, either expressly or impliedly, to use a vehicle on the public roadways except when there is in place one of the three types of security prescribed therein; no distinction is drawn between those three types of security. The legislature clearly intended that they be interchangeable as to the protection they afford. And there is no reason in logic or sound policy why the legislature would have intended that a user whose permission is implied must be covered when the owner chooses a bond or cash deposit, but not when the owner chooses (as do most owners) a liability insurance policy.
Furthermore, § 32-7A-4(b)(l) specifically defines liability insurance by reference to the policy limits prescribed for liability policies in the MVSRA and, therefore, of necessity by reference to the persons covered by those limits. The MVSRA is unambiguous in requiring coverage in automobile liability insurance policies for persons using an insured vehicle with the express or implied permission of the named insured.
As if the foregoing is not plain enough, the MLIA itself takes the somewhat unusual tack of explicitly dictating that it must be read in pari materia with the MVSRA. Further, the definitions of liabili *498 ty insurance in the two statutes essentially mirror one another. The very purpose of the MLIA was simply to expand the requirement of mandatory liability insurance to more drivers than included in the MVSRA. Reading the MLIA more narrowly than the MVSRA would not protect the public from “the common purpose of providing victims of automobile accidents with financially responsible persons to look to-for damages.”[4] Selected Risks Ins. Co. v. Zullo, 48 N.J. 362, 371, 225 A.2d 570, 575-76 (1966) (reading the New Jersey Motor Vehicle Security Responsibility Law, the Unsatisfied Claim and Judgment Fund Law, and the Motor Vehicle Liability Security Law together).
I cannot agree with the main opinion’s conclusion that liability insurers are free to exclude from coverage users of an insured’s vehicle whose permission to use the vehicle is implied rather than express. Both are permitted users. I therefore am compelled to dissent.

. The MLIA directly refers to portions of the MVSRA in numerous provisions beyond those mentioned above. See, e.g., § 32-7A-2(1)(re-ferring to the minimum limits of liability coverage in § 32-7-6(c)); § 32-7A-2(9Xreferring to the minimum limits of liability coverage in § 32—7—6(c)); § 32-7A-5 (referring to self insurance under § 32-7-34); § 32-7A-6(a)(5) (referring to the minimum limits of liability coverage in § 32-7-6(c)); § 32-7A-7 (referring to the suspension provisions in § 32-7-6); § 32-7A-12 (referring to reporting the owner’s name and information to the Department of Public Safety for the purpose of requiring the owner to purchase and maintain insurance under § 32-7-13 and § 32-7-31); and § 32-7A-l 7 (referring to evidence of insurance or verification of insurance through the Online Insurance Verification System ("OIVS”), liability-insurance bond, or cash deposit in § 32-7-6). Moreover, in 2011, when the legislature amended the MLIA, it also amended parts of the MVSRA. Act No. 2011-688, Ala. Acts 2011. Those amendments to the MVSRA refer to the MLIA. See, e.g., § 32-7-19, § 32-7-20, § 32-7-22, and § 32-7-24 (referring to proof of financial responsibility relating to a motor-vehicle liability policy through OIVS under Title 32, chapters 7A and 7B).

. It is clear that the liability policy at issue in Billups was a " 'motor vehicle liability policy' as that phrase is used in the MVSRA.” 227 So.3d at 489. The Billups Court specifically quoted the definition of "motor vehicle liability policy” from what is now § 32-7-22(a) of the MVSRA and then stated that "[t]he question [before us] is the effect the statutory provisions [§ 32-7-22 and § 32-7-23 (addressing uninsured motorist coverage) ] have upon the scope of the uninsured motorist coverage under the policy.” 352 So.2d at 1100.

. At least.42 states and the District of Columbia have compulsory automobile insurance' statutes under which omnibus coverage is required, and such omnibus provisions require coverage for permissive drivers. See 1 William J. Schermer and Irvin E. Schermer, Automobile Liability Insurance § 3.9 (4th ed. 2016),