Judgment rendered January 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,287-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

DAVARIO XAVIER COLE                         Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 376470

Honorable John D. Mosely, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Chad Ikerd

JAMES E. STEWART, SR.                   Counsel for Appellee
District Attorney

REBECCA ARMAND EDWARDS
SAMUEL S. CRICHTON
Assistant District Attorneys

* * * * *

Before STEPHENS, ROBINSON, and ELLENDER, JJ.

**ROBINSON, J.**

Davario Xavier Cole ("Cole") was found guilty as charged by a Caddo Parish jury of one count each of attempted second degree murder, La. R.S. 14:30.1 and 14:27, possession of a firearm by a convicted felon, La. R.S. 14:95.1, and aggravated criminal damage to property, La. R.S. 14:55. He was sentenced to 25 years at hard labor without benefit of probation, parole, or suspension of sentence for the attempted murder conviction, 20 years at hard labor without benefit of probation, parole, or suspension of sentence for the felon in possession of a firearm conviction, and 15 years at hard labor for the criminal damage to property conviction, all to run concurrently. The trial court denied Cole's motion to acquit, motion for a new trial, and motion to reconsider sentence. Cole appeals his convictions of attempted second degree murder and aggravated criminal damage to property based on insufficiency of the evidence.

For the reasons set forth below, we AFFIRM the convictions.

## FACTS AND PROCEDURAL HISTORY

On June 16, 2020, a shooting occurred at the home of Vonseca Woodley ("Woodley") at approximately 2:00 a.m. An additional alleged shooting occurred at Woodley's home later that morning at approximately 7:30 a.m. At the time of the first shooting, Woodley was asleep in her bed when she was awakened by gunshots into her home, striking the walls and shattering the glass shower door in the bathroom adjacent to her bedroom. Her adult daughters, Tia Hudson and Tamera Hudson ("Hudson"), and Tia Hudson's boyfriend, were also in the house at the time. No one was injured. No one witnessed the shooting, but Woodley immediately suspected that the shooter was Cole, who is Hudson's ex-boyfriend.

Several of Woodley's other family members had come to the home early that morning in response to the 2:00 a.m. shooting and were inspecting the property. Woodley's brother, James Turner, a.k.a. "Junior" ("Turner"), Aleka Youngblood ("Aleka"), Woodley's and Turner's sister, and Jordan Youngblood ("Jordan"), Aleka's son, were all outside of Woodley's home when Cole arrived there. Cole testified that he had come over out of concern for Hudson's safety because he had heard about the overnight shooting and another shooting had happened at his cousin's home. Woodley claimed she was inside her home when Cole arrived, while Cole claimed she was outside like the others, but in the front yard. Cole remained in his vehicle and Turner approached Cole, and the two had a brief conversation. Turner claimed he saw a gun in the car and that Cole placed his hand on it while the two spoke. Cole then backed out of the driveway and began driving down the road, but made a U-turn to come back by the house. Turner yelled out to his family outside to run because Cole had a gun. Turner claimed he ran through the garage in the back yard and heard something hitting the house, which he claimed were gunshots. Aleka also claimed she heard gunshots. Jordan stated that he did not hear gunshots due to the chaos of people running and screaming, but that there was a new area of damage to the home that had not been there prior to the 7:30 a.m. incident. Corporal Adam McEntee, the Shreveport Police Department detective who responded to the shots fired call the morning of June 16, 2020, after the second incident, noted that the damage to the home was consistent with gunfire.

Prior to the shooting incidents, Cole and Hudson had been in a tumultuous relationship for several years, which included heated arguments, infidelity, family tension, and multiple occasions of violence by both

individuals. In 2019, a protective order was issued prohibiting Cole from contact with Hudson and Woodley. Despite the protective order, Hudson and Cole continued to contact each other. At one point, Cole received a felony conviction for unauthorized entry of an inhabited dwelling, Woodley's home. Woodley testified regarding a specific incident with Cole that occurred just a few weeks prior to the shootings in which Cole had forced Hudson out of the vehicle they were in, which happened to be owned by Woodley. Woodley confronted Cole and a heated argument took place, whereafter Woodley firmly told Hudson she would no longer allow Hudson to live with her or use her car if she continued to be in a relationship. Cole repeatedly sent harassing messages to or about Hudson and/or her family before and after the protective order, as well as after the shooting incidents while Cole was in jail.

The State originally charged Cole with attempted first degree murder of Turner, but later amended the bill of information to include an attempted second degree murder of Woodley along with the gun possession and criminal property damage charges. Cole pled not guilty. Prior to trial, the court held an evidentiary hearing on the admissibility and relevance of phone calls and text messages sent by and received by Cole while he was in jail. The court found them relevant and admissible, based on the nature of their content. The defense objected to the ruling and continued to object throughout trial with a running objection. During trial, the defense also objected to the admissibility of the existence of a protective order being disclosed, since Cole was not charged with violating the protective order. Part of the State's argument for admission of the protective order was that it was res gestae to these crimes, and because there was a misdemeanor bill

that would be tried.  The State did not submit the misdemeanor violation to the trial court prior to trial, and only raised the issue post-trial.

## DISCUSSION

*Sufficiency of Evidence*

Cole argues that there was insufficient evidence to prove he is guilty of attempted second degree murder and aggravated criminal damage to property.  He notes that there is no forensic evidence tying him to either shooting, including DNA, fingerprints, or ballistics.  No shell casings were recovered, no bullets were matched to a gun associated with Cole, there was no cellphone tower triangulation evidence showing he was in the vicinity of Woodley's house during the 2:00 a.m. shooting, and there were no witnesses to the 2:00 shooting at all or to Cole shooting at the 7:30 incident.  He argues that the messages in which he made terrible statements to Hudson or her family did not include any threats toward Woodley prior to the incidents, and that only those negative messages were shown at trial and none that showed him as thoughtful and apologetic.  It is Cole's position that there was solely speculation that he was guilty based on his tumultuous relationship with Hudson.

Cole also argues that the fact that shots were fired into Woodley's bedroom and bathroom area does not indicate that she was an intended victim.  He notes in particular that Woodley's neighborhood is a high-crime area and it was not uncommon to hear gunshots at night, which was supported by Woodley's own testimony, making it a reasonable possibility that the bedroom could receive inadvertent damage from random gun violence.

4

Cole claims that it is unclear whether there was even a shooting at the 7:30 a.m. incident because no one saw him fire the gun and it is disputed what sound was actually heard by Turner and Aleka. He points out that Linwood Avenue, where the shots were allegedly fired from, is close enough to the house where everyone outside should have been able to clearly hear gunshots. He also claims that it does not make sense that he would attempt to kill Woodley in the middle of the night, flee to avoid being seen, then return in person a few hours later in broad daylight to shoot again. Cole notes that Woodley's family members immediately presumed he was the one who shot at the house at 2:00 a.m., which was what led Turner to believe that Cole was a threat when he came to the house later that morning. Further, it is undisputed that Woodley wasn't in the area outside with the rest of the family during the second incident where the alleged shots were fired, so she could not have been a targeted victim. He also points out that the State decided not to charge Cole with attempted murder of Turner or anyone else who had been in the vicinity of the alleged shootings, but only for the attempted murder of Woodley.

The State argues that, viewed in the light most favorable to the prosecution, the evidence sufficed to prove beyond a reasonable doubt that Cole committed attempted second degree murder by shooting at Woodley's house multiple times in the area of her bedroom and bath where she would be sleeping in the early morning hours, and that Cole committed the crime of aggravated damage to property in connection thereto. Woodley and Turner both testified regarding Hudson's and the family's hostile relationship with Cole, as evidenced by the texts showing various threats by Cole prior to the shooting. Cole made numerous threats toward Hudson and her family, both

5

before and after the shooting incidents. Woodley testified that Cole was the only person who had a problem with her due to her efforts to separate him from Hudson, and noted that she did not know many people in the area since she had not lived in Shreveport very long. Woodley and Hudson had a protective order against Cole. Cole also had a prior conviction for unlawfully entering Woodley's home.

The State urges that the jury reasonably rejected the theories that the first shooting was random gunfire, that Cole did not fire a gun during the second incident, and that the two incidents were unrelated. The State points out that the damage to the home from the first shooting was isolated to the area where Woodley would be sleeping at night, and Cole was admittedly very familiar with the layout of the home. Both Turner and Aleka, who were outside the home during the second incident, stated that they heard gunshots at the exact time that Cole would be driving past the house after he made a U-turn in the road and sped toward the house. Jordan testified that he had come to Woodley's home with a specific purpose, to inspect damage, and that the damage to the home immediately after the second incident was not there previously. The officer on the scene following the second incident testified that the damage to the home was consistent with gunfire. The State claims that Cole's involvement in the second incident, and the ongoing, tumultuous relationship with Hudson and her family, bolstered the establishment of Cole's identity as the perpetrator of the 2:00 shooting.

For attempted second degree murder, the State must prove that Cole had the specific intent to kill a human being and that he committed an overt act in furtherance of that goal. La. R.S. 14:27; La. R.S. 14:30.1. As defined by La. R.S. 14:10(1), specific intent is the state of mind existing when

6

circumstances indicate the offender actively desired the prescribed criminal consequences of his act or failure to act. Specific intent to kill may be inferred from the circumstances and actions of the defendant, including his intentional use of a deadly weapon, pointing a gun and firing in the direction of a person, or firing a gun toward a house where people were standing out front or where he knew people were present within. *State v. Patterson*, 50,305 (La. App. 2 Cir. 11/18/15), 184 So. 3d 739, *writ denied*, 15-2333 (La. 3/24/16), 190 So. 3d 1190. Aggravated criminal damage to property is "the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion." La. R.S. 14:55. The offense is not a specific intent crime.

The standard by which appellate courts are to review the sufficiency of evidence in criminal prosecutions is enumerated in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), as follows:

> A conviction must be based on proof sufficient for any rational trier of fact, when viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.

In conducting a *Jackson* review, the reviewing court may not "substitute its own appreciation of the evidence for that of the factfinder," assess the credibility of witnesses, or reweigh the evidence. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517, *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442, *State v. Nelson*, 44,762 (La. App. 2 Cir. 10/28/09), 25 So. 3d 905. A jury's decision to accept or reject the testimony of a witness in whole or in part is entitled to great deference. *State v. Eason*, 43,788 (La. App. 2 Cir. 2/25/09), 3 So. 3d 685. The fact-finder weighs the respective credibility of the witnesses, and appellate courts will generally not second-

guess those determinations. *State v. Dabney*, 02-0934 (La. 4/9/03), 842 So. 2d 326; *State ex rel. Graffagnino v. King*, 436 So. 2d 559 (La. 1983).

This standard applies in cases involving both direct and circumstantial evidence. *State v. Prude*, 53,193 (La. App. 2 Cir. 3/4/20), 293 So. 3d 183; *State v. Henry*, 47,323 (La. App. 2 Cir. 7/25/12), 103 So. 3d 424, *writ denied*, 12-1917 (La. 3/8/13), 109 So. 3d 356; *State v. Hill*, 47,568 (La. App. 2 Cir. 9/26/12), 106 So. 3d 617. The facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Taylor*, 28,736 (La. App. 2 Cir. 10/30/96), 682 So. 2d 827. Regarding circumstantial evidence, La. R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *State v. Young*, 20-1041 (La. 5/13/21), 320 So. 3d 356. The circumstantial evidence rule is neither separate from nor stricter than the *Jackson* standard of review. *Taylor*, *supra*.

The trial court heard testimony from several witnesses, including Cole, and was in the best position to assess their credibility. This Court will not disturb those determinations. Although this case hinges mostly on circumstantial evidence, when viewed in the light most favorable to the prosecution, there was sufficient evidence to prove beyond a reasonable doubt Cole's identification as the perpetrator and each of the essential elements of the offenses of attempted second degree murder and aggravated criminal damage to property, and every reasonable hypothesis of innocence to find Cole guilty as charged was excluded.

### *Relevance and Admissibility of Jail Calls and Texts*

Cole argues that the trial court erred in admitting certain text messages he sent to Hudson because many were hearsay admitted through a third party and were not relevant, and their admission was prejudicial and not harmless due to their inflammatory nature. Many of the messages were sent while Cole was in jail and did not implicate him in either incident. The messages also concerned Cole's relationship with Hudson, not Woodley. He argues that they did not admit guilt or address any particular facts of the case, but were merely him lashing out under the circumstances.

The State claims that Cole's jail texts and calls were highly probative of his intent, his motivation for the shootings, his consciousness of guilt, and his apparently successful efforts to deter Hudson from testifying. They were *res gestae* of Cole's abusive, toxic relationship with Hudson that led to the offenses committed, which also support the credibility of both Woodley and Turner in their testimony about Cole. Cole made threats to kill Hudson and/or her family members, which were also relevant to demonstrate why Hudson was not there to testify. In particular, Cole texted a month prior to trial to "keep my name out of your mother f***ing mouth or get one of y'all killed out there." He also commented about not being able to get convicted without Turner's testimony. Further, Cole's communications include admissions of guilt. He asks for forgiveness for the "wrong" he did and for another chance, promising he "won't act crazy and flash out." He specifically threatened that "your momma, your uncle, your daddy, all y'all going to feel that iron."

"Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence." La. C.E. art. 401. All relevant evidence is admissible. La. C.E. art. 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. The trial court is vested with much discretion in determining relevance, and its determination regarding the relevance and admissibility of evidence is not to be overturned on appeal in the absence of a clear abuse of discretion. *State v. Magee*, 11-0574 (La. 9/28/12), 103 So. 3d 285; *State v. Duck*, 54,597 (La. App. 2 Cir. 12/14/22), 352 So. 2d 1097, *writ denied*, 23-00079 (La. 12/5/23), 2023 WL 8431617.

The jail calls and texts between Cole and Hudson are highly relevant and probative. They paint a clear picture of the nature of their relationship, which was essential to showing Cole's motivation and intent, and it bolstered the testimony of Woodley and Turner. Although the inflammatory communications between Cole and Hudson are prejudicial to Cole's defense, their value is not outweighed by the danger of unfair prejudice. We find that there is no clear abuse of discretion by the trial court in its evidentiary ruling on the relevance and admissibility of the jail communications.

### Denial of Witness Based on Sequestration

Cole claims that the trial court also erred in not allowing his mother to testify, because she was not going to directly contradict a fact previously testified to by another witness and the concerns of sequestration were not implicated. Cole's mother was present during the entirety of the trial after the rule of sequestration had been invoked, but he argues that she should have been able to testify regarding the inflammatory messages between Cole

10

and Hudson despite sequestration issues, since he was unable to cross-examine Hudson to show that he was never serious with any threats and was merely hotheaded, as evidenced by Hudson's staying in a relationship with him for years without any harm to her or her family. Cole argues that because Hudson did not testify, he was forced to testify himself or have his mother testify as to his propensity to say extreme things he did not mean. He asserts that the State continuously attacked Cole's character and opened the door so that he should have been able to offer character evidence in rebuttal. Cole further claims that his mother was only going to generally address his "reckless mouth" and was not going to testify to directly contradict any factual questions answered by the State's witnesses because no witness had been asked whether Cole tended to act on his threats. Cole cites *State v. Breaux*, 12-0555 (La. App. 4 Cir. 2/27/13), 110 So. 3d 281, *writ denied*, 13-0699 (La. 10/25/13), 124 So. 3d 1093, in which the Fourth Circuit stated "presence alone is not enough to warrant a witness's disqualification."

The State argues that testimony by Cole's mother regarding his "reckless mouth" in response to the admission of evidence regarding his threats was exactly the type of scenario for which the sequestration rules were meant to apply. Because his mother was present for all the testimony concerning Cole's communications, she was well aware of what she was expected to answer in response to Cole's question. The State notes that Ms. Cole was not a party, nor was she listed anywhere in connection to the offenses, and the rule of sequestration was actually requested by the defense. It also refers to *Breaux*, claiming a similarity in that court's ruling to exclude the defendant's father from testifying as to defendant's not residing where he

11

was believed to live, after he had been present during testimony of a police officer who testified about the execution of a search warrant at that residence. The State also disputes Cole's claim that it opened the door to the introduction of character evidence. It argues that Cole's various communications were relevant to establishing intent; therefore, any testimony regarding Cole's character would be impermissible.

The State also points out that Cole knew exactly what evidence it intended to present since it had all been provided timely to the defense and was the subject of extensive argument prior to any testimony. It also notes that Hudson's material witness warrant was recalled prior to opening arguments; therefore, Cole was aware that Hudson was not being presented as a witness and could not be cross-examined, yet his mother was allowed to remain in court throughout the State's case after the rule of sequestration was invoked. The State further notes that Cole was not forced to testify; rather, he was persistent about testifying on his own behalf, seemingly regardless of whether or not his mother took the stand to answer the question about his reckless mouth.

The State also urges that Ms. Cole's excluded testimony, as well the admitted jail communications, were harmless error if deemed improper. An error is harmless when the guilty verdict was surely unattributable to the error. *State v. Robertson*, 06-1537 (La. 1/16/08), 988 So. 2d 166. The State claims that there was ample evidence to convict Cole by way of Turner's and Woodley's testimony, the damage to the home, and other circumstantial evidence outside of the communications with Hudson; and his mother's biased testimony would have been inconsequential.

This Court agrees with the trial court's ruling to disallow the testimony of Cole's mother after she had been present throughout the entirety of the trial, because it would be in clear violation of the sequestration rules. It is clear that her anticipated answer was intended to directly rebut the testimony of other witnesses regarding the nature of Cole's communications with Hudson. In addition, we do not find that Cole's guilty verdict would have been impacted in any way by the allowance of the additional testimony.

## CONCLUSION

For the foregoing reasons, this Court AFFIRMS the defendant's convictions of attempted second degree murder, La. R.S. 14:30.1 and 14:27, and aggravated criminal damage to property, La. R.S. 14:55.

**AFFIRMED.**